WILLIAMS, Appellant, vs. INTERNATIONAL OIL COMPANY, Respondent.

*May 5—June 8, 1954.*

For the appellant there was a brief by *Randall & Scott* and *L. William Connolly, Jr.*, attorneys, and *Quarles, Spence & Quarles* and *Reuben W. Peterson, Jr.*, of counsel, all of Milwaukee, and oral argument by *Mr. Connolly* and *Mr. Peterson*.

For the respondent there was a brief by *Bendinger, Hayes & Kluwin,* attorneys, and *Donald J. Tikalsky* of counsel, all of Milwaukee, and oral argument by *John A. Kluwin.*

BROADFOOT, J.   The plaintiff contends that the defendant violated the provisions of sec. 101.06, Stats., known as the "safe-place statute." The defendant, on the other hand, contends that the light pole was not a place of employment within the meaning of that statute. It cites several cases in which recovery was sought from municipalities or eleemosynary institutions which, of course, have no application here.

Some confusion still arises because the duties of owners of public buildings and places of employment are covered in the same section of the statute. The obligation of the owner of a public building to furnish a safe place under the safe-place statute is limited to structural defects. The obligation of an employer to furnish a safe place of employment is a broader duty. His obligation applies equally to employees and frequenters, and an employee of an independent contractor doing work upon his premises is a frequenter within the safe-place statute. *Neitzke v. Kraft-Phenix Dairies, Inc.,* 214 Wis. 441, 253 N. W. 579. In *Jaeger v. Evangelical Lutheran Holy Ghost Congregation,* 219 Wis. 209, 211, 262 N. W. 585, this court said:

"There is a plain distinction between the obligation of an employer and the obligation of the owner of a building. The employer's duty to furnish safe employment includes the furnishing of a safe place of employment, and the employer has a broad duty not only with respect to the structure, which constitutes the place of employment, but with reference to the devices and other property installed or placed in such place."

The term "place of employment" is defined in sec. 101.01 (1) of the statutes. The filling station and the grounds were

a place where a trade or business was carried on for profit. The light pole was property installed or placed thereon. It was, therefore, a part of the place of employment.

An employer is not liable to frequenters unless the employer has actual or constructive notice of a condition that renders a place of work unsafe. *Pettric v. Gridley Dairy Co.* 202 Wis. 289, 232 N. W. 595; *Kaczmarski v. F. Rosenberg Elevator Co.* 216 Wis. 553, 257 N. W. 598; *Dierkes v. White Paving Co.* 229 Wis. 660, 283 N. W. 446. The plaintiff contends that the defendant had constructive notice of the defective condition of the light pole in that it should have known of the defect.

In ruling on the motion for a directed verdict, the trial court stated that the light pole was approximately 24 to 28 feet high and approximately four inches in diameter at the base and two inches at the top. The record is not entirely clear as to the exact dimensions of the light pole. The pole was described as a telescopic pole. It was set in a concrete abutment built into the ground. A metal pipe from four to six inches in diameter was imbedded in the abutment and extended about 20 inches above the top thereof. Into this pipe was inserted a smaller pipe. Holes were bored through the two pipes and a bolt was inserted therein to hold the two pipes together. The upper part of the pole was a still smaller size of pipe but the method of fastening the third section of pipe to the second is not described in the record. The pole broke where the first and second pieces of pipe were joined.

The plaintiff relies upon the case of *Saxhaug v. Forsyth Leather Co.* 252 Wis. 376, 31 N. W. (2d) 589, as authority for his contention that the defendant should have known of the defective condition of the pipe. The cases are easily distinguishable on the facts. In the *Saxhaug Case* the defendant constructed a four-story building in 1910 which it used as a tannery until 1939. In 1942 the defendant leased the building to a brewing company for the storage of cases of empty

beer bottles. The lease provided that the brewing company should not load the upper floors in excess of 200 pounds per square foot, and the lessor reserved the right of entry to inspect and to make repairs or structural changes. Approximately two weeks after the lessee began using the building the four northwest bays in the north end of the building collapsed and plaintiff's husband was killed because thereof. A jury returned a verdict in favor of the plaintiff and this court held that the jury, from the evidence before it, was justified in concluding that the building was not so constructed as to render the premises safe for the nature of the employment. In that case the building was constructed by the defendant, who had full knowledge of the details of its construction. It was apparently adequate for the purpose for which it was constructed, that is, a tannery. This court held that when an old building constructed for one purpose is leased for profit for another purpose which, to the knowledge of the owner, would impose greater weight upon the building, the owner should inspect the same to see that it was suitable for the new purpose. In this case there is nothing to show when the light pole was constructed. It may have been within a year or two, or it may have been in use for a long period of time. It was constructed for the purpose of supporting a floodlight and a reflector to light up the area in front of the gasoline station. It was not constructed for the purpose of supporting ladders bearing painters weighing 200 pounds and more. The owner, so far as the record shows, had no information as to how the painting was to be done. The owner did not furnish the ladder, nor did it know that a ladder rather than scaffolding or a stepladder would be used. Several different methods could have been employed in the painting of the pole that would have placed no weight or strain upon it. The evidence in the case before us would not support a finding that the defendant had either actual or constructive knowledge of the defect.

In passing upon the motion for a directed verdict the trial court said:

"The plaintiff, at the time in suit, was fifty-one years old, and weighed 207 pounds. He has been a painter all his life and has painted many such poles. His own testimony (on adverse examination) will reveal that he gave the pole every test he, as an expert painter knew of, to determine its safeness, and he concluded that the pole was fit and sufficiently safe for the use to which he, at the behest of his employer, intended to put it to enable him to do his painting work. The testimony is undisputed that the plaintiff chose his own method of doing his painting work without any scaffold but by placing an ordinary ladder against said pole, together with his weight, his supply of paint, brushes, and tools and also placing upon it the additional strain which was required by him at his weight in doing that work. The undisputed evidence convincingly shows that those extra strains and stresses were attributable to his acts and work and caused the breaking down of the pole with the resulting injuries to the plaintiff."

The record supports the determination of the trial court. Nothing has been pointed out to us upon this appeal that would justify us in reversing that determination.

*By the Court.*—Judgment affirmed.