FRANKOVIS, Respondent, vs. KLUG & SMITH COMPANY
and another, Appellants.*

*February 4—March 5, 1957.*

* Motion for rehearing denied, with $25 costs, on May 7, 1957.

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Powell.*

For the respondent there was a brief by *Eisenberg & Kletzke* of Milwaukee, and oral argument by *Sidney M. Eisenberg.*

WINGERT, J.  Appellants contend that material findings of the jury are without support in the evidence and that defendants were therefore entitled to a directed verdict and dismissal of the complaint. In the alternative they assert errors requiring a new trial.

1. It is first argued that there is no evidence to support the finding that the clamp end of the angle iron was not adequately tightened; and reliance is placed on evidence that the sole purpose of the angle irons was to support the weight of light fixtures suspended from them vertically, and not to resist lateral pressures.

There was other evidence which the jury might believe, however, that the electrical subcontractor's employees who installed the angle irons were instructed to fasten the clamps as absolutely tight as possible; that if the clamps had been properly tightened they would have been very tight, tight enough so that if somebody would touch the angle iron and apply some weight behind it it would not fall down. As to the looseness of the particular clamp, there was evidence that while plaintiff braced himself against the angle iron, he

did not "hang" his weight on it; that it slipped off the beam and fell to the floor when he put pressure on it; and that none of the other angle irons on that side was tight, but all were "absolutely loose."

In the light of this and other testimony, we think the question was for the jury, and that the trial court properly refused to disturb its finding.

2. Appellants next contend that there was no evidence to support the finding that the defendants ought, in the exercise or ordinary care, to have reasonably known of the unsafe condition in time to have remedied it or notified the plaintiff. There was no evidence that any representative of either defendant had actual knowledge of the defect; and there was testimony that the electrical subcontractor, Uihlein, was supposed to inspect the electrical installations, that the defendants made only spot checks, inspecting here and there but not inspecting every bolt or piece, that there are hundreds of angle irons and some of them were thus spot-checked, that spot checking is the practice of the industry, and it is impractical to inspect and test every piece that goes into a building.

On the other hand, there was testimony from which the jury could believe that installations in the particular area had ostensibly been completed before Friday, that the painters were instructed by defendants' representative to paint them on Saturday and Sunday (the accident occurred on Sunday), that each of the defendants maintained a staff of inspectors to inspect work, that on the particular Sunday morning all the clamps on "our side" were absolutely loose—none was tight, and that painters working aloft often hold or lean on things like the angle iron if they appear safe, to help them reach difficult places.

While the case is a close one, we cannot say it was error to let the jury's finding stand, having in mind the statutory duty placed upon the defendants to "adopt and use methods

and processes reasonably adequate to render such employment and places of employment safe" for frequenters, and to do "every other thing reasonably necessary to protect the . . . safety . . . of such employees and frequenters." (Sec. 101.06, Stats. 1949.) Plaintiff, an employee of a subcontractor, was a frequenter within the protection of the statutes. *Williams v. International Oil Co.* 267 Wis. 227, 229, 64 N. W. (2d) 817. The jury may reasonably have considered that before sending men to paint in such a place, defendants should have taken more precautions to see that things were as they should have been and seemed to be, and that as it was they virtually led plaintiff into a trap.

The most-persuasive precedent cited for appellants' contentions on this point is *Williams v. International Oil Co.* 267 Wis. 227, 64 N. W. (2d) 817, where it was held that a painter who fell from a ladder leaning against a light pole which he was painting when the pole broke under the pressure of his weight, could not recover under the safe-place statute from the owner of the premises. There, however, there was no evidence that the owner had any notice, actual or constructive, of any defect in the pole or indeed that it was defective for the purpose for which it was intended; and there was no evidence that the owner had any reason to believe that the plaintiff would lean against it on a ladder. We think the facts of the present case serve to distinguish it adequately from the *Williams* decision and the others cited by appellants.

3. It is next urged that plaintiff's negligence was at least equal to that of defendants as a matter of law. There was evidence, however, which if believed by the jury, would warrant the conclusion that the angle-iron work was supposed to be complete, that painters were not ordinarily sent in to paint such installations until they were completed, that the clamps if properly installed would be very tight, that the particular clamp appeared to be tight and did not seem loose

when plaintiff tested it with his hand, that there was no way to get the scaffold closer to the angle iron, that in such situations it is customary among painters to reach out and hold onto things if in their judgment they can do so safely; and that defendants ordered the painters to paint in the area, and hence knew they would be working up among the angle irons.

Comparison of negligence is a matter peculiarly for the jury, and here, viewing the evidence in the light most favorable to the plaintiff as we must, we cannot say that his negligence was so flagrant, or the jury's apportionment of negligence so wholly without support, that the verdict must be set aside.

4. Nevertheless there must be a new trial. The first question submitted to the jury was as follows:

"At the time and place and under existing circumstances, was the place where the plaintiff was working as free from danger to frequenters as the nature thereof would reasonably permit in respect to the tightness or lack of tightness with which the clamp end of the angle iron in question was attached to the I beam?"

Plaintiff's case required a "No" answer, while the answer "Yes" would necessarily result in judgment for the defendants.

The jury were instructed however, that "burden of proof" meant the duty resting on the party having the *affirmative* of the issue to convince the jury by a preponderance of the evidence and to a reasonable certainty of the truth of that party's contention; and again, further on, that before any juror can vote to answer "Yes" to any question, his mind should be satisfied by the greater weight or convincing power of the evidence to a reasonable certainty that the answer should be "Yes." These instructions put the burden on defendants to convince the jury that the first and crucial question should be answered in their favor "Yes," and thus

instructed the jury to answer it favorably to plaintiff unless satisfied to the contrary to a reasonable certainty. While the confusion of affirmative and negative was undoubtedly inadvertent, it was nonetheless error to place the burden of proof on the defendants with respect to the first and basic question in the case.

After giving those instructions and then reading the question to the jury, the court properly charged that the burden of proof was on the plaintiff to satisfy them by a preponderance of the evidence, to a reasonable certainty, that the question should be answered "No," and that if not so satisfied, they should answer it "Yes."

We are unable to say that this correct instruction overcame the vice of the two earlier ones which erroneously placed the burden of proof on the defendants, or that the error was not prejudicial.

"An erroneous instruction on a given subject is not cured by the fact that the law is correctly stated elsewhere, for it cannot be known whether the jury have been guided by the correct rule or by the erroneous one." *Ackley v. Farmers Mut. Automobile Ins. Co.* 273 Wis. 422, 425, 78 N. W. (2d) 744.

5. The special verdict is fatally defective. Having found plaintiff negligent both with respect to the manner in which he used the angle iron and the position which he was in just prior to falling, the jury found that only the negligence with respect to position was an efficient cause of the injury. There is a patent inconsistency between the finding that plaintiff's negligence in the manner in which he used the angle iron was not a cause of his injury, and the earlier finding that the unsafe condition of the premises with respect to the tightness or lack of tightness of the clamp was a cause of the injury. There is no evidence that anything but plaintiff's pressure on the angle iron caused it to slip. If failure to have the clamp sufficiently tight was a cause of the accident, then

plaintiff's negligence as to the manner in which he used the angle iron (putting lateral pressure on it) must necessarily have also been a cause of the accident. The loose clamp could not have caused any injury to plaintiff except as he put pressure on it in using it. On the other hand, if the only cause of plaintiff's fall attributable to him was his unbalanced position then plaintiff's case must fail entirely, since his position, as contrasted with his use of the angle iron, was unrelated to the loose clamp.

This defect in the special verdict may have affected the apportionment of negligence, and taken with the misleading instruction referred to under the previous heading, requires that a new trial be granted.

*By the Court.*—Judgment reversed, with directions to grant a new trial.

The following memorandum was filed May 7, 1957:

PER CURIAM (*on motion for rehearing*). Appellants' motion for rehearing is denied with $25 costs. Respondent's motion for rehearing is denied without costs. The mandate is amended to read:

"Judgment reversed, with directions to grant a new trial. Costs in this court shall abide the result of the new trial."