SALEMI, APPELLEE, *v.* DUFFY CONSTRUCTION CORP., APPELLANT.

[Cite as Salemi v. Duffy Construction Corp., 3 Ohio St. 2d 169.]

(No. 38934—Decided July 28, 1965.)

*Messrs. Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson* and *Mr. Marshall I. Nurenberg*, for appellee.

*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. Smith Warder*, for appellant.

O'NEILL, J. The question presented to this court is whether the plaintiff was a business invitee or merely a licensee at the time when he fell into the excavation and was injured.

It is agreed that the plaintiff was not required by his contract to visit the construction site on a Sunday evening when no work was in progress and no other person was present on the premises. It is agreed that no work was done on Sunday. It is agreed that there was no express or implied request by the defendant that plaintiff visit the construction site on Sunday evening at dusk. There is nothing in the record which would indicate that the defendant had any reason to know that the plaintiff would visit the construction site at dusk on that Sunday evening.

The plaintiff makes no contention that the defendant was liable under Sections 4101.11 and 4101.12 of the Revised Code (frequenter statutes). Plaintiff makes no claim that he was a frequenter.

Sections 4101.11 and 4101.12, *supra*, are not applicable in this case. The premises were obviously not a place of employment on Sunday evening. No work was being performed.

The plaintiff relies solely upon the claim that he was a business invitee of the defendant.

The plaintiff maintains that his visit was for the benefit of the defendant, on the ground that the defendant was urging him to complete his subcontract as quickly as possible, and on the further ground that, if the defendant's contract with the owner, the General Electric Corporation, was completed at a cost below the guaranteed maximum, the defendant was to receive 25% of the savings below that guaranteed maximum, and the General Electric Corporation was to receive 75% of such savings.

The weakness in plaintiff's position is that the plaintiff's subcontract with the defendant called for a unit-price contract under which the amount to be paid to plaintiff by the defendant was computed upon the amount of earth moved, rather than on the time spent.

In addition to that, the time limit in the defendant's contract with the General Electric Corporation did not begin to run until the structural steel was erected.

It appears that the plaintiff went to the construction site at dusk on Sunday evening for his own benefit. This is substantiated by his testimony that, if the rain had been heavy enough to prevent efficient work the following day, he could call the person from whom he rented the equipment and request that no men be sent to the job the next morning, thus saving himself the cost of renting the equipment for that day and the cost of wages of the men.

He testified further that he could divert some of his own equipment to other areas where he had jobs, thus making an additional saving for himself.

The record does not support the plaintiff's position that his trip to the construction site on Sunday evening was for the benefit of the defendant, or that it was required by his contract with the defendant, or that it was requested by the defendant, or that the defendant had knowledge that he intended to make such a trip. The plaintiff was not a business invitee to this construction site at that time, but a licensee. *Scheurer v. Trustees of The Open Bible Church*, 175 Ohio St. 163; *Scheibel v. Lipton*, 156 Ohio St. 308; *Keesecker v. G. M. McKelvey Co.*, 141 Ohio St. 162, 166.

The defendant owed to this plaintiff-licensee the duty not to injure him by willful or wanton misconduct or any affirmative act of negligence. *Scheurer v. Trustees of The Open Bible Church, supra; Soles, Admr., v. Ohio Edison Co.*, 144 Ohio St. 373; *Hicks v. Village of Cortland*, 123 Ohio St. 114, 117; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Potter*, 113 Ohio St. 591; *Hannan, Admr., v. Ehrlich*, 102 Ohio St. 176; *John v. Reick-McJunkin Dairy Co.*, 281 Pa. 543, 127 A. 143; 65 Corpus Juris Secundum 491 to 504, Sections 35 to 38.

Plaintiff does not claim that there was a hidden trap or any violation of a duty concerning the condition of the premises prescribed by statute, ordinance or safety regulations for the benefit of the plaintiff.

The defendant did not know of the plaintiff's presence on the premises and had no opportunity to warn him of any danger. *Scheurer v. Trustees of The Open Bible Church, supra*, paragraph two of the syllabus.

The determination of this question requires a reversal of

the judgment of the Court of Appeals, and it is unnecessary to consider any other alleged errors.

The judgment of the Court of Appeals is, therefore, reversed and final judgment is rendered for the defendant.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN and SCHNEIDER, JJ., concur.
MATTHIAS, HERBERT and BROWN, JJ., dissent.

HERBERT, J., dissenting. The question here, as stated in the majority opinion, is whether appellee was a "licensee" or an "invitee" at the time when he was injured. The answer to this question as well as the determination of the duty owed by appellant, the construction company, to the appellee, according to the majority opinion, requires the application of principles of the common law. However, the General Assembly enacted Sections 4101.11 and 4101.12 of the Revised Code and thereby, in plain and definite language, abrogated the common law and defined the duty owed by appellant to appellee by statutory enactment.

These sections of the Revised Code read in part:

Section 4101.11. "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein *and for frequenters thereof*, shall furnish and use safety devices and safeguards * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees *and frequenters.*" (Emphasis added.)

Section 4101.12. "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, * * * or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees *or frequenters.* No such employer *or other person* shall construct, occupy, or maintain any place of employment that is not safe." (Emphasis added.)

No reference, directly or indirectly, is made in these statutes to invitees or licensees. Such terms are not material in the application of the statutes. When the common law contravenes a statute, the common law must yield. This is axiomatic.

9 Ohio Jurisprudence 2d 558, Section 7, reads in part as follows:

"Ohio courts have naturally *always* upheld the precedence of the statutes enacted by the Legislature when the question at issue concerned *some principle of the common law* seemingly in contravention of the legal provisions, but sought to be enforced by one of the parties." (Emphasis added.)

The principle just quoted applies quite precisely to the case at bar. There a party sought to support his position by reference to the common law; here the appellant is endeavoring to do the same thing. There the principles of the common law were in contravention of the statute; here is precisely the same situation. There the courts ruled that the common law was not applicable and that the statutes must prevail; here the same result should have been reached by the majority.

The term, "frequenter," as used in the quoted statutes, *supra*, includes a subcontractor. In substance, a "frequenter" means one who frequents, one who often or habitually visits or resorts to a place. Consequently, the appellee here, as a subcontractor, is a "frequenter" within the provisions of safeplace statutes requiring employers to furnish a safe place of employment. *Frankovis* v. *Klug & Smith Co.*, 275 Wis. 156, 81 N. W. 2d 495; *Williams* v. *International Oil Co.*, 267 Wis. 227, 64 N. W. 2d 817.

It follows, therefore, that the majority opinion, being based upon common-law principles which have been abrogated by statute, is not supported by sound legal principles.

The jury found that appellant was negligent and that such negligence was the proximate cause of appellee's injuries and returned a verdict for $185,000. The trial court approved the verdict and entered judgment upon it. The Court of Appeals, in the performance of its constitutional duty to weigh the evidence (Section 6 of Article IV of the Constitution of the state of Ohio), affirmed the judgment of the lower court.

It seems apparent that the negligence of the appellant was

generated from its failure to adopt the safety precautions required by Sections 4101.11 and 4101.12 of the Revised Code, *supra*.

It appears that the opinion of the majority is somewhat in the nature of an argument upon the facts. This court does not ordinarily weigh the evidence. But, it is my opinion that the factual contentions of the majority opinion are in certain instances disputed by the record. This is true in the area of evidence that it was the duty of appellee to hasten his job to completion so that other phases of the project could be completed, or well along, before bad weather set in. This was for the acknowledged benefit of the appellant.

The testimony of Mr. Duffy, president of appellant construction company, discloses the following:

"Q. Was there any particular reason why one particular sheet was devoted strictly to Central Excavating Company [Salemi's concern], keeping these kinds of records? A. I—

"Q. It seems to show—it shows their equipment. A. Well, we were interested in the amount of equipment that Central Excavating had on the job, *due to the fact that winter was not far away and we wanted to have the work progress so that we could get our foundation in and our steel erected before the very bad weather set in.*

"Q. In fact, time was somewhat of the essence? A. Yes, it was.

"Q. Wasn't it, in this phase of the work? A. Yes.

"Q. Rather important to get all the excavating work out of the way so that these other people could come in and do their work before your winter set in? A. *That's right.*" (Emphasis added.)

Mr. Salemi, appellee, who was the Central Excavating Company, had a vast amount of planning to do in order to keep a large amount of equipment, both heavy and light, busy on a large job such as this. In an effort to complete the excavating as soon as possible he worked his men six days a week plus overtime.

The testimony of Mr. Salemi, appellee, discloses the following:

"Q. Was time a factor in that contract, Mr. Salemi? A.

Yes, it was, because we were very much told that one of the reasons they [appellant] gave us the contract was that they expected us to in plain words hit it hard, and that means to get the job done in a hurry because they had quite a big job to do and *they couldn't do anything unless the excavation was done first*, and November was just around the corner, and so was December, and so *we promised them [appellant] we would really go at it hard and try to get the job done.*

"Q. How many days a week were your men working? A. On this job, which isn't very common, we worked six days a week and we worked overtime every day.

"Q. You say that was or was not common? A. It was not common. We don't—in other words, I mean we don't work— usually work overtime and on Saturdays unless *there is a definite hurry or some agreement to do it.*" (Emphasis added.)

In the case at bar there was both urgency required by the approach of bad weather and a definite agreement between the parties that Salemi, appellee, would drive the work as hard as he could and plan accordingly.

This and other evidence indicates quite clearly that even under the common law appellee was an invitee of the appellant. At least there was ample evidence for the jury to reach such a conclusion.

For the foregoing reasons, and others that could well be discussed, the judgment of the Court of Appeals should have been affirmed.