JEFFERS, APPELLEE, *v.* OLEXO ET AL.; JAMES C. DAWES COMPANY, INC. ET AL., APPELLANTS.

[Cite as Jeffers *v.* Olexo (1989), 43 Ohio St. 3d 140.]

(No. 88-470—Submitted March 28, 1989—Decided June 7, 1989.)

*Graham, McClelland, McCann &
Ransbottom Co., L.P.A.,* and *Clay P.
Graham,* for appellee Jeffers.

*Hanlon, Duff & Paleudis Co.,
L.P.A.,* and *John G. Paleudis,* for ap-
pellant James C. Dawes Co., Inc.

*Charles H. Bean,* for appellant Bel-
mont County Fair Board.

*McNamara & McNamara,
Stradley, Ronon, Stevens & Young,
William H. Woods, Keith McNamara*
and *S. Gordon Elkins,* urging reversal
for *amicus curiae,* National Welding
Supply Association.

ALICE ROBIE RESNICK, J.   We
will first consider whether a question
of material fact existed as to Dawes,
thus making summary judgment inap-
propriate.

I

The court of appeals held that
material questions of fact existed as to
Dawes' duty to control or retrieve the
helium tanks in spite of the agreement
entered into by the Campaign Commit-
tee with Dawes. This action sounds in
negligence.

As to the elements of a cause of ac-
tion in negligence it can be said that
"[i]t is rudimentary that in order to
establish actionable negligence, one
must show the existence of a duty, a
breach of the duty, and an injury
resulting proximately therefrom. *Di
Gildo* v. *Caponi* (1969), 18 Ohio St. 2d
125 [47 O.O. 2d 282]; *Feldman* v.
*Howard* (1967), 10 Ohio St. 2d 189 [39
O.O. 2d 228]. * * *" *Menifee* v. *Ohio
Welding Products, Inc.* (1984), 15 Ohio
St. 3d 75, 77, 15 OBR 179, 180, 472
N.E. 2d 707, 710. See, also, *Kauffman*
v. *First-Central Trust Co.* (1949), 151
Ohio St. 298, 306, 39 O.O. 137, 141, 85
N.E. 2d 796, 800.

Thus, the existence of a duty is
fundamental to establishing actionable
negligence. "* * * If there is no duty,
then no legal liability can arise on ac-
count of negligence. Where there is no
obligation of care or caution, there can
be no actionable negligence." (Foot-
notes omitted.) 70 Ohio Jurisprudence
3d (1986) 53-54, Negligence, Section
13. Only when one fails to discharge an
existing duty can there be liability for
negligence. See *Di Gildo* v. *Caponi*
(1969), 18 Ohio St. 2d 125, 127, 47 O.O.
2d 282, 283, 247 N.E. 2d 732, 733.

Whether a duty exists depends
largely on the foreseeability of the in-
jury to one in the plaintiff's position.
"* * * Only when the injured person
comes within the circle of those to
whom injury may reasonably be an-
ticipated does the defendant owe him a
duty of care. *Drew* v. *Gross,* 112 Ohio
St., 485, 489, 147 N.E., 757; *Ford* v.
*Cleveland, Cincinnati, Chicago & St.
Louis Ry. Co.,* 107 Ohio St., 100, 140
N.E., 664; 29 Ohio Jurisprudence, 419,
420." *Gedeon* v. *East Ohio Gas Co.*
(1934), 128 Ohio St. 335, 338, 190 N.E.
924, 926; 70 Ohio Jurisprudence 3d
(1986) 51, Negligence, Section 11.

"* * * If the actor's conduct creates such a recognizable risk of harm only to a particular class of persons, the fact that it in fact causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not make the actor liable to the persons so injured." 2 Restatement of the Law 2d, Torts (1965), Section 281, Comment *c.*

Hence in *Menifee, supra,* we focused on whether appellees therein should have foreseen that the air supply system would be used by General Electric for breathing purposes in addition to providing power for air tools. We found that the "* * * foreseeability of harm usually depends on the defendant's knowledge." *Id.* at 77, 15 OBR at 180-181, 472 N.E. 2d at 710. Because none of the appellees knew of this additional use, we held that they "could not have foreseen or reasonably anticipated the decedent's injuries and, as a matter of law, cannot be held liable for negligence. * * *" *Id.* at 77, 15 OBR at 181, 472 N.E. 2d at 710.

Likewise in *Clemets* v. *Heston* (1985), 20 Ohio App. 3d 132, 138, 20 OBR 166, 172, 485 N.E. 2d 287, 294, the appellate court found that a police officer could not be liable for a man's suicide. The court noted that no events forewarned the police officer that the man arrested was especially despondent or suicidal. "Under a broader *negligence* analysis, the officer had no duty to prevent that which he could not have reasonably foreseen, notwithstanding that the custodial relationship had terminated. *Justice* v. *Rose, supra* [(1957), 102 Ohio App. 482], at 485; cf. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77 ('The existence of a duty depends on the foreseeability of the injury.'). * * *" (Emphasis *sic.*)

In *Gedeon, supra,* foreseeability again was the central issue. There,

defendant's agent stepped into the middle of traffic on a busy street, causing an accident as well as injury to plaintiff's decedent. "In delimiting the scope of duty to exercise care, regard must be had for the probability that injury may result from the act complained of. No one is bound to take care to prevent consequences, which, in the light of human experience, are beyond the range of probability." *Id.* at 338, 190 N.E. at 926.

Not only must it be shown that Dawes breached a duty to decedent but it must also be determined that Dawes' alleged negligence proximately caused decedent's injury. "Proximate cause is a troublesome phrase. It has a particular meaning in the law but is difficult to define. It has been defined as: 'That which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that from which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might have been anticipated.' 65 C.J.S. § 103 Negligence pp. 1130-1131. * * *" *Corrigan* v. *E.W. Bohren Transport Co.* (C.A. 6, 1968), 408 F. 2d 301, 303.

The rule of proximate cause " 'requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.' " *Ross* v. *Nutt* (1964), 177 Ohio St. 113, 114, 29 O.O. 2d 313, 314, 203 N.E. 2d 118, 120, quoting *Miller* v. *Baltimore & Ohio Southwestern RR. Co.* (1908), 78 Ohio St. 309, 325, 85 N.E. 499, 504. See, also, *Pendrey* v. *Barnes* (1985), 18 Ohio St. 3d 27, 18 OBR 23, 479 N.E. 2d

383; cf. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467.

The question of whether Dawes owed a duty of care to decedent thus turns on the foreseeability of the injury and whether any acts or omissions of Dawes proximately caused the death. The events preceding decedent's death must be scrutinized in order to determine what duty, if any, Dawes owed to decedent. Upon review of these events, we find that Dawes could not reasonably have anticipated the scenario which preceded decedent's death.

On September 5, 1984, Dawes delivered helium tanks to the Democratic Party tent so that the Campaign Committee could inflate balloons. The Campaign Committee on other occasions had rented helium tanks from Dawes and had returned them. However, the three helium tanks used by the Campaign Committee at the Belmont County Fair were not returned as others had been in the past. Instead they were left leaning against the commercial building at the fairgrounds, behind some bushes but apparently within public view and access. Neither the Agricultural Society, which owned the property on which the tanks were left, nor the School Board removed the tanks.

On September 27, 1984, the day before the incident, a member of the Campaign Committee asked Dawes for another helium tank. At that time Dawes requested the return of the prior tanks if the helium had been used. The member of the Campaign Committee indicated that he would return them to Dawes along with the newly ordered tank.

On September 28, 1984, more than two weeks after the close of the fair, the decedent purchased a ticket to the football game. The decedent, however, did not remain in the stadium. Instead he along with some friends left the walkway leading to the stadium, found the helium tanks, and inhaled helium from the tanks. Decedent was not an intended user of the helium and did not use the helium in an intended manner.

In order to find that the death of decedent was foreseeable, we must find that Dawes knew or, acting as a reasonably prudent person, should have known that helium would remain in the tanks which were not returned to Dawes by the Campaign Committee; that the Agricultural Society would not remove the tanks from the location where they were left by the Campaign Committee; and that a child attending a football game would find the tanks, ignore the warning label and inhale a sufficient amount of helium to cause suffocation. Thus, Dawes cannot have proximately caused decedent's injury if, under all of the circumstances, it did not foresee and, acting as a reasonably prudent person, could not have foreseen the consequences of its alleged negligent act. In other words, we must equate foreseeability with the proximate cause of decedent's death.

This court in *Gedeon, supra,* held at the syllabus that "[d]amages for an injury resulting from a negligent act of the defendant may be recovered if a reasonably prudent and careful person, under the same or similar circumstances, should have anticipated that injury to the plaintiff or to those in a like situation would probably result."

Decedent's death was without question a tragedy. "When such a tragedy happens, the first reaction, quite naturally, may be to cast about for fault or some explanation of why the tragedy occurred. * * *" *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, 61, 22 OBR 77, 79, 488 N.E. 2d 853, 855. However, when the " '* * * intervening events are of such a kind that no foresight could have been expected to

look out for them, the defendant is not to blame for having failed to do so. * * *' " *Id.* at 61, 22 OBR at 79, 488 N.E. 2d at 856, quoting from Holmes, The Common Law (1881), at 92.

Under the circumstances of this case, that it was the responsibility of the Campaign Committee to return the tanks to Dawes and that Dawes was assured by a member of the Campaign Committee the day before the accident that the tanks would be returned, Dawes could not have foreseen that the tanks had been left at the fairgrounds in an area easily accessible to attendees of the football game. Dawes' rental of the helium tanks to the Campaign Committee in no way could be the proximate cause of decedent's death. Accordingly, the court of appeals erred in failing to affirm the trial court's grant of summary judgment in favor of Dawes.

## II

We now turn to the trial court's granting of summary judgment in favor of the Agricultural Society.

The Agricultural Society is the owner of the fairgrounds. Pursuant to a lease agreement, the Agricultural Society leased portions of the fairgrounds to the School Board. The lease included the athletic area, stadium, grandstand, and field house, together with the "right and privilege to use for purposes of ingress to and egress from said leased premises rights-of-ways [*sic*] over other premises of the LESSOR and the right and privilege to use all ticket offices of the LESSOR located at the entrances to said fair grounds."

On September 28, 1984, the decedent purchased a ticket to enter the fairgrounds to attend a football game. As an invitee of the School Board, the decedent had only the right to use the walkways designated for ingress and egress in addition to portions of the fairgrounds leased to the School Board. Thus, his right to enter extended only to the property leased to the School Board and did not include the other fairgrounds property.

The helium tanks were located on property owned by the Agricultural Society. The decedent could be termed either a trespasser or, at best, a licensee on the Agricultural Society's property when he strayed from the walkway. An owner or occupier of land owes no duty to either a licensee or a trespasser upon its land "except to refrain from wanton, willful or reckless misconduct which is likely to injure him." *Soles* v. *Ohio Edison Co.* (1945), 144 Ohio St. 373, 380, 29 O.O. 559, 562-563, 59 N.E. 2d 138, 141.

This court stated in *Salemi* v. *Duffy Constr. Corp.* (1965), 3 Ohio St. 2d 169, 172, 32 O.O. 2d 171, 173, 209 N.E. 2d 566, 568, "[t]he defendant owed to this plaintiff-licensee the duty not to injure him by willful or wanton misconduct or any affirmative act of negligence." A trespasser is "* * * one who unauthorizedly goes upon the private premises of another without invitation or *inducement, express or implied,* but purely for his own purposes or convenience * * *." (Emphasis added.) *Keesecker* v. *G.M. McKelvey Co.* (1943), 141 Ohio St. 162, 166, 25 O.O. 266, 268, 47 N.E. 2d 211, 214. We find in this case that decedent was induced to go upon the premises by the football game and therefore was a licensee at the location of the helium tanks. "* * * [A]s to the duty owing to a licensee, * * * it may be generally stated that a licensee takes his license subject to its attendant perils and risks, that the licensor owes him no duty except to refrain from wantonly or wilfully injuring him, and that he should exercise ordinary care after discovering him to be in peril. * * *"

*Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176, 185-186, 131 N.E. 504, 507. See, also, *Light* v. *Ohio Univ.* (1986), 28 Ohio St. 3d 66, 68, 28 OBR 165, 167, 502 N.E. 2d 611, 613. However, the result is the same whether decedent was a licensee or trespasser. The Agricultural Society owed only a "duty not to injure * * * [decedent] by willful or wanton misconduct or any affirmative act of negligence." *Salemi, supra.* There is nothing in the record which would show that the Agricultural Society engaged in willful or wanton misconduct or committed an affirmative act of negligence.

In *Stark Cty. Agricultural Soc.* v. *Brenner* (1930), 122 Ohio St. 560, 571, 172 N.E. 659, 663, this court stated that in addition to the duty to refrain from wantonly or willfully injuring gratuitous licensees, the agricultural society therein also had the duty to "avoid exposing them to known dangers." Appellee contends that the Agricultural Society had knowledge of the helium tanks left behind by the Campaign Committee and consequently owed a duty to the children it knew would be attending the football games.

Bernard Coleman, the treasurer of the Fair Board at the time of decedent's death, stated that on September 10, the Monday immediately following the 1984 Belmont County Fair, he saw the tanks leaning against the commercial building. Coleman did not ensure that these tanks were removed.

From this knowledge, appellee asserts that the Agricultural Society had a duty to somehow secure, enclose or remove the tanks in order to prevent injury to others, especially children.

However, there is nothing in the record which shows that Coleman knew that the tanks contained helium, that people inhale helium to make their voices change pitch, or that helium if inhaled could cause suffocation. Furthermore, according to the "Information and Rules" sheet given to each exhibitor prior to the fair, all exhibitors were to remove their property by Thursday, September 13, 1984. Hence, when Coleman saw the helium tanks he could not have anticipated that the Campaign Committee would not follow the "Information and Rules" and fail to remove the tanks.

In *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 191, 26 OBR 160, 164, 497 N.E. 2d 1118, 1122, we stated that foreseeability was the linchpin when determining liability. In the present case, although children's presence at the fairgrounds was foreseeable, decedent's inhalation of helium was not. Thus, the Agricultural Society could not have anticipated decedent's actions and summary judgment as to its alleged negligence was proper.

For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate summary judgment against appellee and in favor of both Dawes and the Agricultural Society.

*Judgment reversed.*

MOYER, C.J., HOLMES, DOUGLAS and WRIGHT, JJ., concur.

SWEENEY and H. BROWN, JJ., dissent.

H. BROWN, J., dissenting. For the most part, I agree with the general statements of the law as set forth by the majority. I do take issue with the assertion, "[i]n other words, we must equate foreseeability with the proximate cause of decedent's death." In the law of negligence, the concepts of foreseeability and proximate cause are

not interchangeable and should not be equated. But my reason for dissent is not so much grounded upon disagreement with legal pronouncements as it is upon the application of those pronouncements to the facts of the case before us.

The issues below were resolved against the plaintiff on summary judgment. Thus, the facts should be construed most strongly in plaintiff's favor. Civ. R. 56(C); *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 188, 26 OBR 160, 161, 497 N.E. 2d 1118, 1120. The majority has not done that.

## I

In my opinion, it is foreseeable that people will attempt to inhale helium from tanks used to pump helium into balloons. This is done (and has even been done on television) to experience a peculiar change in the sound of one's voice. What is not perhaps foreseeable is that death can be the consequence of such playful behavior. Thus the case against the supplier of the helium tanks should have been decided on the issue of whether the warning placed on those tanks was adequate. Reasonable minds can differ on whether the warning in this case was adequate to put one on notice that death could result from the inhalation of helium.

## II

Since the plaintiff's decedent was a ticket purchaser to a high school football game, he properly entered the Belmont County Fairgrounds as a business visitor. The issue is whether he lost this status by reason of his behavior after coming on the premises. Factual issues remain to be decided. These include: (1) whether the area in which the game was played was a physically separated part of the fairgrounds, (2) how that separation was accomplished and made known to those who came to the game, (3) whether the game-going public had made a practice of using that part of the grounds where the injury occurred. Thus, a determination of the legal status of the plaintiff's decedent is premature.

For these reasons I respectfully dissent. I would affirm the judgment rendered by the court of appeals.[4]

SWEENEY, J., concurs in the foregoing dissenting opinion.

---

[4] Although I would reach the same decision as was rendered by the court of appeals, my reasons for reaching that decision are somewhat different.

## APPENDIX

HELIUM

UN1046

DO NOT REMOVE THIS LABEL

NON FLAMMABLE

**CAUTION:** HIGH PRESSURE GAS. CAN CAUSE RAPID SUFFOCATION. Close valve when not in use and Store and use with adequate ventilation. Use in accord when empty. Use with equipment rated for cylinder pressure. with Linde Form L-4602 (MSDS) and safe practices booklet L-3499. **FIRST AID:** IF INHALED, remove to fresh air. If not breathing, give artificial respiration. If breathing is difficult, give oxygen. Call a physician.

FOR INDUSTRIAL USE ONLY

PG-3 (10/83) · UNION CARBIDE CORPORATION-LINDE DIVISION: DANBURY, CT 06817

LINDE