Ahmad Abu NAAJ, Plaintiff-Appellant,

v.

AETNA INSURANCE COMPANY, Defendant-Respondent,

John DOE, Defendant,

Adel KHEIRIEH, a/k/a Kheirich, Defendant-Third-Party
Plaintiff-Respondent,

Mohsin SAID, Ross Financial Services and Employers
Reinsurance Corporation, Third-Party Defendants.

Court of Appeals

*No. 96–3640. Submitted on briefs January 6, 1998.—Decided
March 31, 1998.*

(Also reported in 579 N.W.2d 815.)

121

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Harold D. Block* of *Law Office of Harold B. Block* of Milwaukee.

On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the brief of *Joseph A. McCarthy* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J.   Ahmad Abu Naaj appeals from a summary judgment dismissing Naaj's complaint, which alleged safe place violations, against Adel Kheirieh and Aetna Insurance Company. Naaj claims the trial court erred in granting Kheirieh's motion for summary judgment. Because summary judgment was properly granted, we affirm.

## I.  BACKGROUND

On June 12, 1994, Naaj was working at his place of employment, Post Foods, which is a grocery/liquor store. The store leases space in the building located at 3455 Martin Luther King Drive. Kheirieh was the owner of the building. On the date of the incident, a man entered Post Foods and attempted to take a bottle of wine. When Naaj confronted the man, he struck Naaj with the bottle, causing serious injuries.

Naaj filed a lawsuit against Kheirieh alleging that, as the owner of the building, Kheirieh has a duty and an obligation to ensure that the building was a safe place to work, pursuant to the safe place statute, § 101.11, STATS. The complaint alleged that Kheirieh

123

knew or should have known that the building was located in a high-crime area, which required Kheirieh to equip the building with "security systems, such as silent alarms and surveillance cameras." There is also an allegation that an alarm system that was in place was deactivated in order to perform some remodeling to the building.

Kheirieh filed a motion seeking summary judgment on the basis that, as the owner of the building used as a place of employment, his statutory duties were limited to maintaining the building free of structural defects and unsafe conditions associated with the structure. *See* § 101.11(1), STATS. The motion proffered that because Naaj's injuries were not related to any structural defect or unsafe condition associated with the structure, summary judgment was appropriate.

The trial court ruled in pertinent part:

> [T]he duty to maintain this security system is a duty associated with conditions of employment and maintaining a safe employment, which is the duty of the employer and not the duty of an owner of a place of employment.
>
> . . . .
> . . . there is no case that says the owner of the building is responsible to install and maintain some sort of a security alarm system for the conduct of a business which is operated by a separate legal entity on those premises . . . .

The trial court granted Kheirieh's motion for summary judgment and dismissed the case. Naaj now appeals.

## II.  DISCUSSION

Naaj claims the trial court erred in granting summary judgment because: (1) the law is unclear; and (2)

the trial court applied the wrong legal standard; instead of determining whether Kheirieh had a duty to maintain the alarm system, the trial court should have considered whether Kheirieh made the premises as safe as its nature permitted. We are not persuaded.

The procedure for reviewing a trial court's decision on summary judgment has been set forth in numerous cases and will not be repeated here. *See Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Our review is *de novo. See id.*

██ The statute at issue here is the safe place statute, § 101.11, STATS. It states in pertinent part:

> **(1)** Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.
>
> **(2)**(a) No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do

every other thing reasonably necessary to protect the life, health, safety or welfare of such employes and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe.

As noted by the trial court, the statute creates three different categories of persons under the safe place law: employers, owners of places of employment, and owners of public buildings. This distinction is supported by the language of the statute itself as well as case law interpreting it. *See generally Leitner v. Milwaukee County*, 94 Wis. 2d 186, 287 N.W.2d 803 (1980); *Jaeger v. Evangelical Lutheran Holy Ghost Congregation*, 219 Wis. 209, 262 N.W. 585 (1935).

There is a plain distinction between the obligation of an employer and the obligation of the owner of a building. The employer's duty to furnish safe employment includes the furnishing of a safe place of employment, and the employer has a broad duty not only with respect to the structure, which constitutes the place of employment, but with reference to the devices and other property installed or placed in such place.

*Jaeger*, 219 Wis. at 211–12, 262 N.W. at 586.

The obligation of an owner of a public building to furnish a safe place under the safe place statute is limited to structural or physical defects or hazards. *See Williams v. International Oil Co.*, 267 Wis. 227, 229, 64 N.W.2d 817, 818 (1954). "Some confusion still arises because the duties of owners of public buildings and places of employment are covered in the same section of the statute." *Id.* The obligation of an owner of a public

building to furnish a safe place under the safe place statute is limited to structural defects. *See id.* "The obligation of an employer to furnish a safe place of employment is a broader duty." *Id.* An employer's obligation includes providing a safe place of employment *and* safe employment. *See id.*

The decisive question in this case, therefore, is whether the allegations regarding the alarm system and safety devices fall into the category of "safe place of employment" or "safe employment."[1]

If it relates to a "safe place of employment," both the owner and employer are responsible. If it relates only to "safe employment," however, then only the employer is responsible for such condition. Naaj argues that because Kheirieh controlled the alarm system and, because Kheirieh deactivated the alarm system during remodeling, the failure to have the alarm system working on the date of the incident falls on Kheirieh. Kheirieh argues that an alarm system does not relate to a safe place of employment. Stated differently, it is not related to the structural safety of the building or the physical condition of the building. Rather, he contends maintaining an alarm system in a crime-laden neighborhood falls into the category of ensuring employees' safe employment. That is, it relates to conditions of employment. As a result, he contends that this duty rests with the employer, not with the owner.

In considering this question, our supreme court concluded that an owner's duty is satisfied in making sure a building is safe if the building "is composed of proper materials and is structurally safe, and that the

---

[1] It is undisputed that Kheirieh was sued as the owner, and there is no allegation that he is also being sued as the employer.

statute does not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed." *See Holcomb v. Szymczyk*, 186 Wis. 99, 104, 202 N.W. 188, 191 (1925).

The allegation in the instant case is that Kheirieh violated the safe place statute because, as the owner, he failed to maintain the alarm system. We conclude that an alarm system is not part of the structural composition of the building. The alarm system does not relate to a safe place of employment. Usually safety devices that protect employees from criminal activity are not part of the structure of the building. Whatever danger could have been avoided because of a functioning alarm system, such danger was not due to any unsoundness of the structure. Providing a safety device which might make the store safer for Naaj was not the duty of Kheirieh as owner of the building, but rather the duty of the employer. *See Asen v. Jos. Schlitz Brewing Co.*, 11 Wis. 2d 594, 603, 106 N.W.2d 269, 274 (1960). Protection of employees from injury during an attempted crime by a third-party is part of the employer's duty to provide safe employment. *See Leitner*, 94 Wis. 2d at 193–96, 287 N.W.2d at 806–07.

Accordingly, the trial court was correct to conclude that, as a matter of law, Kheirieh, in his capacity as owner, could not be held responsible for a safe place violation for failure to maintain an alarm system. Contrary to Naaj's contentions, the law is not unclear in this area and the trial court applied the correct legal standard.

*By the Court.*—Judgment affirmed.

SCHUDSON, J. *(dissenting)*. Like the parties, the trial court, and the majority, I accept for purposes of the summary judgment analysis of this case, that Kheirieh ordered remodeling of the store and, in the process, deactivated or authorized the deactivation of the alarm system.[1] Given that factual premise, I disagree with the majority's conclusion.

Although Naaj's claims seem tenuous and might ultimately prove unconvincing to a jury, we must remember that the trial court dismissed his action at the summary judgment stage. The majority now upholds that dismissal based on two erroneous legal conclusions constructed on two cornerstones: 1) the distinction between the structural safety of a building and the employment safety of an employee in the building; and 2) the distinction between the safe place statute liability of an owner and of an employer. Both legal distinctions exist, but both crumble in this case.

---

[1] The record is unclear. It includes what appears to be only a portion of Kheirieh's affidavit. That portion has no discussion of any remodeling or deactivation of the alarm system. The record also includes what appears to be a repair order from a security system company, dated June 15, 1994, for work on the VCR, cameras, and wiring at Post Food & Liquor.

The complaint offers two different allegations regarding Kheirieh's responsibility for any alarm deactivation. First, it states that, "as owner of the building," he "knew or should have known of the existing conditions of inadequate security devices and that existing security devices had been disabled, removed or moved to a locked office. . . ." Later, it states that, "as owner and lessor of said property," Kheirieh "had caused and consented to the premises being in an unsafe condition because security systems, such as silent alarms and surveillance cameras . . . had been rendered ineffective by either being dismantled, deactivated, ignored, removed from the work area, or were lacking."

The majority relies on *Holcomb v. Szymczyk*, 186 Wis. 99, 202 N.W. 188 (1925), for the proposition that "a building is safe if the building 'is composed of proper materials and is structurally safe, and that the statute does not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed.'" Majority op. at 127–28 (quoting. *Holcomb*, 186 Wis. at 104, 202 N.W. at 191). *Holcomb*, however, dealt with safe place statute liability in the context of a landlord/tenant relationship which, the court explained, had no applicability to an employer/employee relationship:

> [T]he relation of landlord and tenant in fact and in law is vastly different than the relation of employer and employ[ee]. The duties of a master to his servant do not remotely resemble the duties of a landlord to his tenant. The relationships are not even analogous and are derived from different sources in the law. . . .

*Holcomb*, 186 Wis. at 102, 202 N.W. at 190. The distinction the majority attempts to draw—a distinction that, as a matter of law, would absolutely separate alarm systems and related safety devices from the structure of a building—further breaks down when we examine *Jaeger v. Evangelical Lutheran Holy Ghost Congregation*, 219 Wis. 209, 262 N.W. 585 (1935), another case on which the majority attempts to rely. *See* Majority op. at 126.

*Jaeger* involved the safe place statute claim of a woman who was injured by chairs falling from a "pile" of folding chairs as she was setting them up in a church. *Id.* at 210, 262 N.W. at 585. Concluding that the employer, not the owner, had safe place statute responsibility, the court explained:

130

> The permitting of temporary conditions wholly dissociated from the structure does not constitute a violation of the safe-place statute by the owner of a building, although it may, and undoubtedly does, constitute a violation if permitted by an employer.

*Id.* at 212, 262 N.W. at 586. The folding chairs, of course, were not part of the church building. An electronic alarm system, however, might not be "wholly dissociated from the structure."

Still, as the majority explains, Naaj sued Kheirieh as an owner, not an employer. Therefore, under *Jaeger*, would not "[t]he permitting of [the] temporary conditions"—the deactivation of the security system—result in Kheirieh's safe place liability only if he had been sued as an employer? Answering that question, the majority inexplicably ignores *Prehn v. Niss & Sons, Inc.*, 233 Wis. 155, 288 N.W. 736 (1939), in which the supreme court declared:

> In previous cases, this court has stated without deciding the question of *whether one who is owner of a building and also is maintaining it as a place of employment is liable only for structural defects as owner or sustains the larger liability of an employer.* The case at bar squarely presents this question and, having given it full consideration, *we hold that a person in the situation above outlined sustains not merely the liability of an owner under the safe-place statute but also the larger liability of one conducting a place of employment.* Hence, if there is a failure to comply with the requirements of the safe place statute, the mere fact that the injury is caused by a defect other than a structural defect would not of itself be sufficient to excuse from liability one who is both employer and owner.

131

*Id.* at 157, 288 N.W. at 737 (citations omitted; emphases added).

The instant case also "squarely presents this question." Naaj's complaint alleged that Kheirieh was the "owner of the building." Kheirieh's answer admitted not only that he was the owner of the building, but also that at the time of Naaj's injury, he was the sole owner of the corporation that owned Post Food & Liquor and employed Naaj. In his affidavit, Kheirieh stated, "I'm the same owner for the store and the building," and acknowledged his personal involvement in the purchasing, remodeling, and repairing of the building and store. *See Williams v. International Oil Co.*, 267 Wis. 227, 231, 64 N.W.2d 817, 819 (1953), and *Burmeister v. Damrow*, 273 Wis. 568, 580–82, 79 N.W.2d 87, 94–95 (1956) (discussing owners' safe place statute liability and its relation to their knowledge of temporary conditions).

Thus, in this case, we are dealing with a security system that, at the very least, involves a building's electrical components that might not be "wholly dissociated from the structure," and we are dealing with an owner who *also* is an employer. Consistent with the supreme court's holding in *Prehn*, the safe place statute simply does not allow an owner/employer to carry out *owner/employer authority* for installation or activation of an alarm system, and then shed *employer responsibility* for its deactivation.

Therefore, I conclude that the trial court erred in granting summary judgment and, accordingly, I respectfully dissent.