OPINION
{¶ 1} Bruce Talbert and his family, plaintiffs-appellants, are appealing from the grant by the trial court of summary judgment to the defendants. Their sole assignment of error is:
 {¶ 2} "The trial court erred in granting summary judgment in favor of LJB, Inc. and Hawa, Inc., by ruling that neither company owed a duty of care to Bruce Talbert as a matter of Law."
 {¶ 3} The relevant portions of the decision of the trial court are set forth as follows:
 "I. FACTS {¶ 4} "The above-captioned action stems from a personal injury sustained by Plaintiff Talbert during the course of his employment with Amcast, Inc. (`Amcast'). On April 2, 2000, Talbert, a maintenance employee at Amcast, was servicing a production machine when a fellow employee started the machine in an attempt to assist Talbert. When the machine began to operate, Talbert, still inside, was pinned against a die that at the time was heated to a temperature of over 500 degrees. As result, he sustained severe physical injury. Talbert has initiated a separate tort claim against Amcast and its insurer stemming from the incident which is presently pending.
 {¶ 5} "Prior to Talbert sustaining his injury, in July 1999, Amcast had engaged LJB Group, Inc. (`the Group') to design and assist in implementing a lockout/tagout system that would comply with OSHA requirements. A lockout/tagout system is a workplace safety program intended to prevent employees from sustaining injury during the course of servicing machinery. The lockout system refers to a program that disables machinery from functioning while it is being serviced. A tagout system refers to a system of signs that communicate to other employees that machines are in the process of being serviced and should not be operated.
 {¶ 6} "The Group, an Ohio corporation, is comprised of both HAWA and LBJ [sic], each of which own fifty-percent of the Group's outstanding shares. When the Group is hired to perform services, it enters into subcontracts with LJB and HAWA to perform certain parts of those services. LJB provides civil engineering, structural engineering, and architectural services, while HAWA provides mechanical and electrical engineering services. The Group's shareholders' agreement contains the following provision regarding indemnification (`Group Indemnification Agreement'):
 {¶ 7} "LJB and [HAWA] shall each defend and indemnify Group and the other from claims, liabilities, damages, and expenses (including, without limitation, attorneys' fees and other expenses relating to the defense of claims and suits) arising out of or relating to (i) any breach by the indemnifying party and Group or between the indemnifying party and any customer or client for whom the indemnifying party is providing services at the request of or on behalf of Group, and (ii) any negligence or willful misconduct by the indemnifying party (or any officer, employee or subcontractor of the indemnifying party) in connection with the performance of services by the indemnifying party of [sic] behalf of the Group or on behalf of any customer or client of the Group . . . Nothing in this Agreement or in the business venture is intended to constitute LJB and [HAWA] partners. Each LJB and [HAWA] shall deal with Group as an independent contractor and neither LJB or [HAWA] assumes any obligation to any third party for the performance of any obligations of, or for any negligence or willful misconduct by, the other. Defendant HAWA's Exhibit B, at 2-4.
 {¶ 8} "After the Group was approached by Amcast about the project, it submitted a written proposal that provided for three distinct phases of work: Phase I — the creation of a written program for lockout/tagout procedures; Phase II — the creation of lockout signage for each piece of equipment covered by the program; and Phase III — training of Amcast employees on lockout/tagout procedures.
 {¶ 9} "As of July 1999, Amcast wished to proceed only with Phase I of the proposal. HAWA employee Robert Stevens (`Stevens') and LJB employee Peter Waldron (`Waldron') spent five hours touring Amcast's facility and generally discussing what would be necessary for a lockout/tagout program. After this initial inspection, Waldron prepared the lockout/tagout proposal. Stevens reviewed the proposal for style and format prior to it being submitted to Amcast. In January 2000, the Group submitted Phase I, the written program. The program listed certain duties and responsibilities that would need to be executed by Amcast, including obtaining the proper equipment and conducting proper training of its employees and proper supervision of Amcast employees to assure compliance with the program.
 {¶ 10} "In January 2000, Amcast contacted the Group about Phase III of the proposal. It chose not to implement Phase II of the program. Regarding the proposed Phase III, the parties agreed that the Group would conduct three training classes on the lockout/tagout procedures for participants chosen by Amcast. Amcast agreed that all other employees not trained by the Group would be trained by their in-house safety engineer. The Group held three training sessions. Neither Talbert nor the employee he was working with at the time of the accident were selected by Amcast to attend a training session conducted by the Group. As of the date of the accident, neither had been trained on lockout/tagout procedures by Amcast's in-house safety engineer.
 "II. LAW AND ANALYSIS {¶ 11} "Presently before the Court are Defendant HAWA's Motion for Summary Judgment; and Defendants LJB and Waldron's Motion for Summary Judgment. [The court's discussion of the standard for granting summary judgment is omitted].
 "* * * {¶ 12} "Defendants HAWA, LJB and Waldron move this Court to grant Summary Judgment in their favor as to Plaintiffs' claim that they negligently developed and/or implemented the lockout/tagout system at Amcast.
 {¶ 13} "To sustain a cause of action for negligence, a plaintiff must establish that a duty is owed to him by the defendant, that defendant breached the duty, and that the breach of duty was the proximate cause of plaintiff's damages. Jeffersv. Olexo (1989), 43 Ohio St.3d 140, 142. Defendants claim that Plaintiffs' negligence claim must fail because they owed no duty to Plaintiffs, and that even if they did owe such a duty, the breach of such duty was not the proximate cause of Plaintiffs' damages.
 {¶ 14} "The first determination for this Court is whether Defendants owed a duty to Plaintiffs. Plaintiffs contend that by entering into the contract with Amcast to create a written lockout/tagout system that complied with OSHA requirements, the Group assumed a duty of care imposed by Ohio law, specifically that `[o]ne who undertakes, gratuitously or for consideration, to render services to another, which he should recognize as necessary for the protection of third person, or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . (b) [h]e has undertaken to perform a duty owed by the other to the third person.' Hill v. Sonitrol ofSouthwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 42-43; citing Restatement of the Law 2d, Torts, 324A (1965). Further, Plaintiffs point out that OSHA requires an employer whose machines are not capable of being locked out to utilize a tagout system. See 29 C.F.R. 1910.147(c)(2)(I). Plaintiffs combine these two principles to synthesize the conclusion that the Group had a legal duty to `recommend that Amcast do precisely what OSHA require[d]: use tagout procedures so long as Amcast's machines were incapable of being lockout out (i.e., until [the Group] completed Phase I of its work).' Pl. Memorandum Opposing Def. LJB's Motion for Summary Judgment (July 1, 2003), at 7.
 {¶ 15} "Yet the plain language of the Restatement establishes that no such duty exists under the present circumstances. In terms relevant to this case, the Restatement provides that any duty which Amcast owed to Talbert and which it delegated to the Group through its contract, would necessarily be imputed to the Group. However, this does not mean that any and all duties which Amcast had to maintain a safe workplace and comply with OSHA requirements were automatically imputed to the Group by virtue of it entered into a safety-related contract with Amcast. In other words, those duties that Amcast did not delegate to the Group did not become imputed to the Group, but rather remained the duties of Amcast.
 {¶ 16} "Amcast was required by OSHA to use a tagout system until a lockout system was in place. Amcast had notice of this requirement well before it entered into it's [sic] the contract with the Group and chose not to comply with the OSHA requirement. This Court cannot find that the Restatement is properly extended, as Plaintiffs contend, to impute a duty upon the Group that it `recommend' to Amcast that it comply with OSHA requirements that Amcast had already known of and of with it had chosen not to comply. Rather, any duty of care imputed to the Group by virtue of its contract with Amcast was limited only to the services for which the Group was contracted to perform. Amcast contracted with the Group specifically to create a written program for lockout/tagout procedures, not to provide it with provisional consulting on safety procedures to take until the written program was completed. As such, this Court finds that the Group did not owe a duty to Talbert to `recommend' to Amcast that it comply with OSHA requirements and implement an interim tagout procedure pending the competition [sic] of Phase I."
 {¶ 17} The court then granted the defendants' motions for summary judgment as to plaintiffs' claims for negligence.
 {¶ 18} Our review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 1996-Ohio-336.
 {¶ 19} We find that the record fully supports the trial court's decision, which we hereby approve and adopt the portions of it cited above as our own.
 {¶ 20} The assignment of error is overruled and the judgment is affirmed.
Brogan, J. and Grady, J., concur.