## Harkcom v. Ohio Power Co.

*[Cite as 4 AOA 140]*

*Case No. CA-8004*
*Stark County, (5th)*
*Decided June 18, 1990*

*Ellen Simon Sacks, Esq., Spangenberg, Shibley, Traci & Lancione, 1500 National City Bank Bldg., 629 Euclid Avenue, Cleveland, OH 44114-3062, for Plaintiffs-Appellants.*

*James R. Blake, Esq. Day, Ketterer, Raley, Wright & Rybolt, 800 William R. Day Bldg., 121 Cleveland Ave. South, Canton, OH 44702, for Defendants-Appellees.*

GWIN, J.

Plaintiff-Appellant, Michael D. Harkcom (appellant), appeals from the judgment of the Stark County Court of Common Pleas which granted defendant-appellee, Ohio Power Company's, motion for summary judgment against him.

The trial court's September 27, 1989 judgment entry states in pertinent part:

"The Court finds that as a licensor, the defendant, Ohio Power Company, owed no duty to the plaintiff, licensee, other than to refrain from wanton, willful or reckless misconduct which would be likely to injure him. Viewing the evidence before this Court most favorably to the plaintiff, the Court finds no dispute as to any material fact which would justify a finding that the defendant engaged in wanton, willful or reckless misconduct as it related to the plaintiff."

(Page 2).

The trial court further stated:

"Further, the Court finds that even if the Court had found that the plaintiff was a business invitee, that the defendant, Ohio Power Company, would still be entitled to a summary judgment. Based on a review of the evidence before this Court, the Court finds that the defendant was under no duty to protect the plaintiff as a business invitee against dangers which were known to said invitee or were so obvious or apparent to said invitee that he could reasonably be expected to have discovered them and protected himself against them."

Appellant raises the following two assignments of error:

*"ASSIGNMENT OF ERROR NO. I.*
"THE COURT ERRED IN HOLDING AS A MATER OF LAW THAT APPELLANT MICHAEL HARKCOM WAS A LICENSEE, OWED A MINIMAL DUTY ONLY TO REFRAIN FROM WANTON, WILLFUL, OR RECKLESS CONDUCT, SINCE APPELLEE OHIO POWER, AN ELECTRIC POWER COMPANY, OWED HARKCOM AS A MEMBER OF THE PUBLIC, AN INVITEE OR FREQUENTER, A DUTY TO USE ORDINARY CARE OR THE HIGHEST DEGREE OF CARE, IN THE CONDUCT OF ITS BUSINESS.

*"ASSIGNMENT OF ERROR NO. II.*
"THE COURT ERRED IN CONCLUDING THAT APPELLEE OHIO POWER OWED TO DUTY TO MICHAEL HARKCOM AS A MATTER OF LAW BECAUSE THE DANGERS OF ELECTROCUTION WERE OBVIOUS."

The record reveals that appellant suffered an electric shock injury on November 29, 1985 while attempting to transfer cable television lines from an existing Ohio Power Company utility pole to a newly installed Ohio Power utility pole in Pleasant City, Ohio.

At the time of the accident appellant was employed by cable Systems U.S.A. Associates as a cable line installer and had been in that business since 1976. He was not employee of the Ohio Power Company.

In order to perform the work, appellant used a bucket truck owned by Cable Systems. He controlled the movement of the bucket. After Harkcom raised the bucket to the height in the vicinity of the cable equipment on the pole, he reached down to pick something up from the bucket and as he stood up his head contacted an electrical wire on the utility pole above the Cable System's line

The wire which he contacted and its location was standard equipment on the pole which had been installed in 1920. The record also reveals that Ohio Power Company and appellant's employer (Cable Systems) had entered into a "Joint Use Agreement" whereby Ohio Power provided Cable Systems with a non-exclusive license to use certain utility poles owned by Ohio Power for the purpose of attaching cables, wires and other attachments to facilitate the transmission of cable television signals to its subscribers.

Although it is the practice for the television cable to be installed 40 inches below any electric wires on a pole and at least 30 inches below any transformer on a pole, appellant did not install the cable in accordance with these clearances.

It is also the custom and practice in the industry for cable system equipment to be transferred to a new utility pole only after the electric utility company has completed its transfer of equipment. Here, Ohio Power notified Cable System before the accident that the cable changeover could be performed on the pole in question, pursuant to the "Joint Use Agreement."

Although there is a question of whether appellant had been specifically instructed to work on the pole in question on the date of the accident, it is undisputed that appellant was acting within the scope of his employment.

Appellant has filed the appropriate 4(D) statement, to wit: "that the court's judgment was 'inappropriate on the undisputed facts.'"

We now turn to the assignments of error.

I.

The first claim is not well taken. The trial court determined that plaintiff was a licensee to whom Ohio Power owed no greater duty than to refrain from wilful, wanton and reckless misconduct. The test for determining whether appellant was indeed a licensee or whether he should be placed in some higher category, is simply his status on the property and his relationship to the property owner. As pointed out unmistakably in the trial court's entry, it is manifestly clear that Harkcom was a licensee on the day in question.

As it did at the summary judgment level, appellant's argument that he was an invitee (business visitor) must fail. First, and fatal to appellant on its face, the agreement that permitted Cable Systems to work on Ohio Power Company poles is called a "license agreement." As pointed out correctly by appellee, "an invitee in tort law is a business visitor who was on the premises to do something which is beneficial to the property owner. If he is on the premises for

his own convenience or benefit, he is a licensee." (Brief at 11). The authorities cited by appellant attempting to elevate himself to the invitee position are inapposite and unsupportive.

Appellant's first assignment of error is overruled.

## II.

The trial court articulated the rule of law precisely when it stated that the sole duty owed by Ohio Power to appellant was to refrain from wanton, wilful and reckless misconduct likely to injure him. The Supreme Court of Ohio as recently restated and reaffirmed the above duty in *Jeffers v. Olexo* (1989), 43 Ohio St. 3d 140 as follows:

"An owner or occupier of land owes no duty to either a licensee or trespasser upon its land 'except to refrain from wanton, willful or reckless misconduct which is likely to injure him' *Soles v. Ohio Edison Co.* (1945), 144 Ohio St. 373, 380."

The Supreme Court also stated:

"[A]s to the duty owing to a licensee, . . . it may be generally stated that a licensee takes his license subject to its attendant perils and risks, that the licensor owes him no duty except to refrain from wantonly or willfully injuring him, and that he should exercise ordinary care after discovering his to be in peril." *Jeffers* at 145 (citations omitted).

Additionally, when reviewing motions for summary judgment pursuant to Civ. R. 56.

[T]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, and if when so viewed reasonable minds can come to different conclusions the motion should be overruled.

*Hounshell v. American States Inc. Co.* (1981), 67 Ohio St.2d 427, 433.

Here, the trial court found that there was no evidence presented in opposition to Ohio Power Company's motion for summary judgment which would justify a finding that Ohio Power engaged in wanton, willful or reckless misconduct. *Black's Dictionary*, 4th Ed., (1951), defines "reckless" as conduct which is "careless heedless, inattentive; indifferent to consequences. According to circumstances it may mean desperately heedless, wanton, or willful. . ."

From the above, we find believe that the affidavit of Roy A. Martin, appellant's expert, raises genuine issues of material fact as to whether Ohio Power acted recklessly. Excerpts from that affidavit are as follows:

"OPC knew or should have known that CSU workmen would be working at the incident pole prior to the completion of OPS change over of its lines and equipment to the new pole.

The old pole and its equipment did not comply with the NESC, with regard to provision of work space; to the preferred arrangement of voltages i.e., high voltage on top low voltage next down, cable TV and telephone next down; and to height above the earth. This was known to OPC, as evidenced by work documentation and the West deposition.

"OPC partially completed the old to new pole changeover and left the work site in an inherently dangerous condition, i.e., with a 7200 volt wire from the cutout to the transformer, extending into the area of foreseeable, TV cable work.

"OPC placed temporary insulation on the 7200 volt wire from the cutout to the 7200 volt top wire and on a nearby low voltage wire, apparently to prevent wire to wire contact. Similar temporary insulation, on the contacted wire would have prevented MCH's injuries.

". . .

"MCH was scheduled to work at another location; however, conditions there prevented him doing so. The move to the new location was not unusual; rather it was typical of a diligent worker.

"The temporary insulation in place on the OPC wires, to a person not competent to recognize the intricacies of 7200 volt power line cutout, lightning arrester and transformer connections, falsely indicated that the dangerous wires had been insulated. Further, weatherproof covered wires appear insulated to the untrained eye."

In summary:

"1. MCH's contact on the 7200 volt wire and his injuries resulted from OPC's creation of the above describe inherently dangerous condition.

"2. MCH had no causative role in his accident.

"3. OPC left the partially completed change over site and equipment in an inherently dangerous condition.

"4. OPC failed to exercise available options to prevent injuries to persons working at the site."

Certainly, based upon Martin's opinions, reasonable minds could conclude that Ohio Power was acting recklessly when it left a 7200 volt wire with temporary insulation in the cable company's foreseeable area of work, and notified the cable company that the cable change-over could be performed on the pole in question.

We also take exception to the trial court's finding that, even if appellant-Harkcom was a business invitee, all evidence before it indicated that the dangers to appellant were obvious and apparent and that appellant could reasonably be expected to have discovered them and accordingly protected himself.

In his affidavit, Martin opines that to an untrained eye, such as appellant's the temporary insulation "falsely indicated that the dangerous wires had been insulated."

Questions of whether appellant was comparatively negligent or whether he had sufficient knowledge of the dangerous conditions to be found to have assumed the risk are questions of fact properly decided by the jury.

In short, appellant had presented sufficiently evidence to raise a genuine issue of material fact as to whether Ohio Power Company acted willfully, wantonly or recklessly.

Accordingly, we sustain appellant's second assignment of error and remand this cause to the trial court for further proceedings according to law.

*Judgment reversed and*
*cause remanded.*

MIILLIGAN, P.J., and HOFFMAN, J., concur.