961 F.2d 1578
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ollie RALPH, Plaintiff-Appellant,
v.
The DALLAS CORPORATION f/k/a Overhead Door Corporation,
Defendant-Appellee.
 No. 91-3793.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before NATHANIEL R. JONES, RALPH B. GUY, JR., and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 On February 29, 1988, plaintiff-appellant, Ollie Ralph, filed the instant action in federal court against the defendant-appellee, Overhead Door Corporation ("Overhead"). Ralph asserted theories of negligence and strict liability for injuries sustained while using a device known as a "Jifflox," a product designed, manufactured, and sold by Overhead. On February 28, 1991, Overhead filed a motion for summary judgment, to which Ralph responded. On July 25, 1991, the district court entered an order granting summary judgment to Overhead on all of Ralph's claims. Ralph has appealed from that order. For the reasons that follow, we affirm.
 
 
 2
 * The facts of this case are, for the most part, not in dispute. On March 17, 1986, Ralph was injured while working with an Overhead Jifflox converter dolly. A Jifflox is used in the trucking industry for two purposes: to connect two semi-tractor trailers, thereby forming a set of "doubles," and to lock into the frame of a two-axle semi-tractor, thus creating a three-axle tractor capable of hauling a single, larger trailer.
 
 
 3
 A Jifflox consists of a frame resting upon a suspension mechanism that supports a single axle and double wheels on either side. On top of the frame is the "fifth wheel," a large disk supporting the kingpin of the trailer. In order to use the Jifflox in the third-axle configuration, the operator connects the Jifflox to the semi-tractor by backing the tractor up under the protruding tongue of the Jifflox. The tongue is then supposed to automatically engage in the tractor frame, and the operator can proceed to drive the unit.
 
 
 4
 On the night of March 16, 1986, Ralph, an employee of Ryder Truck Lines, delivered cargo to the Ryder terminal in Lima, Ohio. After dropping off his cargo, he attempted to engage the Jifflox tongue in the normal way, but was unsuccessful. Ralph went into the Ryder terminal and requested assistance. He then returned to the tractor and attempted to engage the Jifflox on his own. Ralph climbed onto the frame of the semi-tractor, then attempted to pull the Jifflox forward to couple it to the tractor. To this end, Ralph inserted a "pin-puller," which he had found lying beside the dock of the Lima terminal, into a hole in the Jifflox's fifth wheel. A pin-puller is ordinarily used to slide the fifth wheel of the Jifflox back and forth, rather than to move the entire Jifflox onto a semi-tractor. Ralph claimed in his deposition, however, that he had previously seen others use the pin-puller in the way he was using it on the night of the accident.
 
 
 5
 After Ralph hooked the pin-puller into the Jifflox hole, he tugged at it to pull the Jifflox forward. The pin-puller apparently slipped out of the hole, whereupon Ralph fell back onto the tractor frame and injured his shoulder. Ralph claims that he was never instructed on how to use the Jifflox, nor had he ever seen any warning label on the Jifflox as to its proper use.
 
 
 6
 In entering summary judgment in favor of Overhead, the district court rejected Ralph's claim that Overhead was negligent in failing to warn Ralph, on the ground that Ralph did not offer sufficient evidence that his conduct was reasonably foreseeable. The court also found that Ralph had assumed the risk that resulted in his injury by failing to wait for assistance before attempting to move the Jifflox on his own. Ralph challenges both determinations on appeal.
 
 II
 
 7
 Ralph argues that the district court erred in rejecting his claim that Overhead negligently failed to warn him on the ground that Ralph's conduct was not reasonably foreseeable. In a diversity action resting on state law, this court reviews de novo a district court's determination of state law. See Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991). In applying the state's substantive law to the facts before us, "we follow the law of [the state] as announced by that state's supreme court. Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." Miles v. Kohli & Kaliher Assocs., 917 F.2d 235, 241 (6th Cir.1990) (citations omitted).
 
 
 8
 The parties agree that the law of Ohio guides the resolution of this case. Under Ohio law, a plaintiff seeking to establish an action for negligence must show that the defendant owed him a duty, that the duty was breached, and that his injury proximately resulted from the breach. Jeffers v. Olexo, 539 N.E.2d 614, 616 (Ohio 1989). The existence of a duty is a question of law for the court to determine. Mussivand v. David, 544 N.E.2d 265, 270 (Ohio 1989). "Whether a duty exists depends largely on the foreseeability of the injury to one in the plaintiff's position." Jeffers, 539 N.E.2d at 616-17. Where the plaintiff challenges the defendant's failure to warn, the foreseeability inquiry focuses upon the reasonableness of the defendant's actions. See Crislip v. TCH Liquidating Co., 556 N.E.2d 1177, 1182-83 (Ohio 1990) (holding that, in a failure-to-warn case, "there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public").
 
 
 9
 As an initial matter, Ralph claims that the district court failed to consider his failure-to-warn claim. The district court began its discussion with the observation that "[p]laintiff contends that defendant's motion for summary judgment should be denied because defendant's advertisements and the 'complete lack of warnings' place in dispute the issue of whether plaintiff's injury was reasonably foreseeable." J.A. at 15. While this statement seems strong proof that the court did in fact consider the failure-to-warn issue, Ralph points out that the court's subsequent discussion dealt primarily with the law of defective design and manufacture, which Ralph contends, is distinct from the issue of failure to warn.
 
 
 10
 While it is true that, under Ohio law, "a product may be unreasonably dangerous ... as the result of the lack of an adequate warning even though the product has no design or manufacturing defect," Crislip, 556 N.E.2d at 1181, the analyses undergirding failure-to-warn and defective-design claims coalesce significantly under the concept of "unreasonable danger." In Temple v. Wean United, Inc., 364 N.E.2d 267 (Ohio 1977), the Ohio Supreme Court adopted section 402A of the Restatement of Torts 2d, thus providing a cause of action in strict liability for injury from a product. Id. at 271; see Leichtamer v. American Motors Corp., 424 N.E.2d 568, 574 (Ohio 1981). "Section 402A subjects to liability one who sells a product in a 'defective condition unreasonably dangerous' which causes physical harm to the ultimate user." Leichtamer, 424 N.E.2d at 576. Comment j to section 402A, from which Ralph's failure-to-warn claim derives, provides in pertinent part:
 
 
 11
 In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use....
 
 
 12
 ....
 
 
 13
 ... [A] product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.
 
 
 14
 Restatement (Second) of Torts § 402A cmt. j (1965). Under both a failure-to-warn and a defective-design analysis, then, "[a] product will be found unreasonably dangerous if it is dangerous to an extent beyond the expectations of an ordinary consumer when used in an intended or reasonably foreseeable manner." Leichtamer, 424 N.E.2d at 577. Thus, the district court's analysis correctly focused upon the threshold issue of whether Ralph's conduct and his resulting injury were reasonably foreseeable to Overhead.
 
 
 15
 Ralph also challenges the district court's conclusion that he failed to raise a genuine issue of fact about whether Overhead should have reasonably foreseen Ralph's conduct and resulting injury. Ralph rests his challenge exclusively upon his own deposition testimony and the affidavit testimony of one Wade Bedell. During Ralph's deposition, the following exchange took place:
 
 
 16
 Q. ... Had you ever seen anyone else try to couple a Jifflox to a tractor using the method that you used the night of your accident?
 
 
 17
 A. I seen the switcher do it at our home terminal.
 
 
 18
 Q. Was it your understanding that that was a proper way to move the Jifflox?
 
 
 19
 A. That's the way I've seen them do it.
 
 
 20
 J.A. at 181-82. Ralph would have us infer from this exchange (1) that coupling the Jifflox to a tractor by means of pulling it with a pin-puller was a common method of attaching a Jifflox, (2) that Overhead should have reasonably foreseen that people would use this method of attaching the Jifflox, and (3) that Overhead should also have been aware that someone using this method might slip and injure himself.
 
 
 21
 We find this chain of inference too attenuated to raise a genuine issue of fact as to reasonable foreseeability. First, Ralph's testimony fails to establish that Overhead should have foreseen that people in plaintiff's position might use a pin-puller, rather than a more appropriate tool, to engage the Jifflox into a semi-tractor frame. Indeed, as Ralph testified, there was nothing to suggest that the pin-puller was supposed or intended to be used in this fashion:
 
 
 22
 Q. Is there a, you know, a hole there for that pin to fit in, or was this just a place where you kind of caught it?
 
 
 23
 A. It's a hole where you hook your trailer to it. It's nothing for a pin puller, no, ma'am.
 
 
 24
 Q. I'm sorry?
 
 
 25
 A. It's nothing for the pin puller. It's where you hook your trailer. It's where your trailer locks in there.
 
 
 26
 Q. So the pin puller's not supposed to be put in there, but you were using--
 
 
 27
 A. There's nowhere to put the pin puller.
 
 
 28
 Id. at 183-84. Moreover, the mere fact that Ralph had previously observed a person at his place of employment use the pin-puller in a similar fashion is insufficient to conclude that Overhead should have foreseen that people might do so, and that such users might injure themselves in the process.
 
 
 29
 Ralph also relies upon the affidavit testimony of Wade Bedell, a self-employed safety consultant who averred that he has investigated the Jifflox dolly for four years. Bedell asserted the following:
 
 
 30
 5. It is my opinion that it was reasonably foreseeable to the Defendant, that a Jifflox dolly equipped with airbag suspension, would not couple properly with the tractor or jam if the tractor was not backed exactly in line with or on plane with the dolly.
 
 
 31
 6. It is my opinion that it was reasonably foreseeable to the Defendant that when hung up or jammed, an operator, such as Plaintiff, would climb on the frame of the tractor to attempt to complete the coupling procedure or un-jam the dolly.
 
 
 32
 7. It is my opinion that the Jifflox dolly should have had warnings on it that cautioned operators of the dangers of climbing on the tractor frame to complete the hook up or coupling procedure or un-jam the unit.
 
 
 33
 Id. at 25. While we find that Bedell's affidavit presents a close question, we believe it is insufficient to raise a genuine factual issue as to the reasonable foreseeability of plaintiff's conduct. The dispositive issue in this action is not simply whether Overhead could have foreseen that a person in Ralph's position "would climb on the frame of the tractor to attempt to complete the coupling procedure," id., but rather, whether he or she would attempt to do so by means of an instrument not designed for that purpose. There are, after all, presumably many different, and perhaps significantly less serious, dangers associated with climbing onto a tractor and pulling the dolly, either by hand or perhaps with some instrument better suited for the task. Ralph's injury was not simply a consequence of his pulling the Jifflox, or even of his standing up on the tractor frame, but of his pulling the Jifflox from that position with an instrument that was not designed for that use. Our review of the record reveals no other evidence indicating that Ralph's conduct was reasonably foreseeable to Overhead. Accordingly, we affirm the district court's grant of summary judgment against Ralph on his negligence claim.
 
 III
 
 34
 Ralph next claims that the district court erred in granting summary judgment to Overhead on Ralph's strict liability claim. This claim was also predicated on Ralph's contention that his injuries were proximately caused by Overhead's failure to warn him of the dangers associated with the Jifflox. In Crislip v. TCH Liquidating Co., 556 N.E.2d 1177, 1182-83 (Ohio 1990), the Ohio Supreme Court noted that a claim for failure to warn may rest upon principles of negligence, principles of strict liability, or both. The court explained, however, that regardless of the theory chosen, the defendant's duty of care remains the same:
 
 
 35
 Under either a negligence or strict liability theory, the important factors for the jury to consider [are] whether the defendant knew or should have known of the danger and whether the warning allowed the consumer to use the product safely. In a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. Thus, the standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning.
 
 
 36
 Id. at 1182-83 (footnote omitted) (emphasis added).[1] As this quote makes crystal clear, a threshold inquiry in a failure-to-warn claim, regardless of whether plaintiff proceeds under a theory of negligence or strict liability, is whether the plaintiff's conduct, and the dangers posed by it, were reasonably foreseeable to the defendant. Because, as discussed above, Ralph has failed to raise a genuine issue of fact as to whether his injury was reasonably foreseeable, we conclude that Overhead was entitled to summary judgment on Ralph's strict liability claim as well.[2]
 
 IV
 
 37
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The court was careful to note, however, that it did "not mean to suggest that a cause of action for negligent failure to warn or warn adequately is identical to one brought under strict liability." Id. at 1183. The court noted, for instance, that while comparative negligence might offset an award pursued under a negligence theory, such a defense is not allowed in an action in strict liability. Id
 
 
 [2]
 Because Overhead's absence of duty is fatal to Ralph's strict liability claim, we find it unnecessary to address the merits of Ralph's challenge to the district court's conclusion that Ralph assumed the risk of injury