[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Williams County Court of Common Pleas, following a jury verdict, which found that appellant, Terry Thompson, and appellee, Continental General Tire, Inc. ("General Tire"), were each fifty percent liable for Thompson's injuries resulting from an on-the-job accident at appellee's place of business, reduced a $60,000 judgment in appellants' favor by fifty percent, and apportioned the remaining damages between appellants and Terry Thompson's employer, Preston Trucking Company ("Preston").
On appeal appellants/cross-appellees, Terry and Kimberly Thompson, set forth the following four assignments of error:
 "I. THE VERDICT OF THE JURY IN AWARDING PLAINTIFF TERRY THOMPSON SIXTY THOUSAND DOLLARS (60,000.00) [SIC] REDUCED BY FIFTY PERCENT TO THIRTY-THOUSAND DOLLARS ($30,000.00) FOR COMPENSATORY DAMAGES IS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS SO GROSSLY INADEQUATE AS TO SHOCK REASONABLE SENSIBILITIES REQUIRING A NEW TRIAL.
 "II. THE VERDICT OF THE JURY IN FAILING TO AWARD ANY DAMAGES TO KIMBERLY THOMPSON FOR HER LOSS OF CONSORTIUM CLAIM WAS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS SO GROSSLY INADEQUATE AS TO SHOCK REASONABLE SENSIBILITIES THAT A NEW TRIAL IS REQUIRED.
 "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS IN FINDING PRESTON TRUCKING A STATUTORY SUBROGOR PURSUANT TO § 4123.93, THEREBY SUBJECTING APPELLANT'S VERDICT TO THE SUBROGATION RIGHTS OF INVOLUNTARY PLAINTIFF PRESTON TRUCKING COMPANY.
 "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN CHARGING THE JURY WITH INAPPROPRIATE INSTRUCTIONS ON COMPARATIVE NEGLIGENCE WHICH ELEMENTS WERE NOT SATISFIED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
In addition, appellee/cross-appellant General Tire sets forth the following five cross-assignments of error:
 "I. THE TRIAL COURT ERRED IN DENYING GENERAL TIRE'S MOTION FOR A DIRECTED VERDICT AND ITS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 "II. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THE OWNER OF PREMISES IS NOT THE INSURER OF THE SAFETY OF PEOPLE WHO ARE INVITED ONTO THE PREMISES.
 "III. THE TRIAL COURT ERRED IN DENYING GENERAL TIRE'S MOTION FOR A PARTIAL DIRECTED VERDICT ON THE ISSUE OF FUTURE ECONOMIC DAMAGES.
 "IV. THE TRIAL COURT ERRED IN FAILING TO INFORM THE JURY THAT PRESTON TRUCKING COMPANY WAS A PARTY PLAINTIFF IN THE ACTION AND WAS SUBROGATED TO ALL OF THE RIGHTS OF PLAINTIFF TERRY THOMPSON AGAINST GENERAL TIRE IN THE AMOUNT OF WORKERS' COMPENSATION BENEFITS PAID TO HIM OR ON HIS BEHALF.
 "V. THE TRIAL COURT ERRED IN DENYING GENERAL TIRE'S MOTION FOR TAXATION OF COSTS AND IN GRANTING PLAINTIFFS' REQUEST FOR ADDITIONAL LITIGATING EXPENSES TO BE TAXED AS COSTS."
The undisputed facts which are relevant to the issues raised on appeal are as follows. Appellant Terry Thompson is a truck driver for appellee Preston. On June 9, 1994, appellant arrived at General Tire's facility to pick up a load of tires. Before appellant's arrival, General Tire employee David Wagner had stacked four large tires, in "smokestack" style[1], in the "staging area," near where appellant's truck was to arrive. When it was time for appellant's truck to be loaded Wagner, using a forklift, placed three of the large tires, weighing over one thousand pounds each, in an upright position, and leaned them against a stable stack of two larger "half-track" tires. The half-track tires together weighed approximately eleven thousand pounds.
While Wagner was loading the fourth tire onto appellant's truck with the forklift, appellant moved one of the three large tires and began rolling it by hand toward his truck. As part of the loading process, appellant rotated the large tire one hundred eighty degrees, causing him to turn his back on the remaining two leaning tires. When appellant was approximately six feet from the tires, they fell, striking him from behind and knocking him to the floor. The tire appellant was rolling then fell on top of the other two.
As a result of the accident, appellant's left ankle was broken and his right foot was crushed. He was taken to the hospital, where surgery was performed that same day. Appellant was released from the hospital two days later, and was off work for six months while he recovered from his injuries.
On June 1, 1995, a complaint was filed by appellant against General Tire[2], in which he alleged that his injuries were caused by General Tire's negligence. Specifically, appellant alleged that he was "subjected to the unreasonable risk of bodily harm" created by the procedure used to load the tires. Accordingly, appellant sought damages for his permanent personal injuries, lost wages, pain and suffering, mental aggravation, and medical and other related expenses. Appellant's wife, appellant Kimberly Thompson, and his children, Ryan and Megan Thompson, sought damages for claims of loss of consortium. On August 2, 1995, General Tire filed an answer.
On February 9, 1996, General Tire filed a motion to compel the joinder of Preston as an involuntary plaintiff. In support thereof, General Tire argued that Preston, as a self-insured employer under Ohio law, had an interest in the lawsuit and is subrogated to appellant's right to receive damages from General Tire in a tort action. On February 21, 1996, appellant filed a memorandum in opposition to such joinder and, on April 11, 1996, the trial court filed a judgment entry in which it found that Preston "is a statutory subrogor pursuant to Section 4123.93," and ordered Preston joined as a party plaintiff. On May 22, 1996, Preston filed its "SUBROGATION COMPLAINT."
On November 19, 20, and 21, 1996, a jury trial was held, at which testimony was presented by appellant, Wagner, and appellant Kimberly Thompson. The video deposition testimony of Jeffrey Berus, M.D., and Richard Peoples, M.D., was also presented at trial.
Appellant testified at trial that he had been picking up tires from General Tire for eight and one-half years as part of his "regular route" before June 9, 1994, and that he frequently helped to load the large tires onto his truck. Appellant further testified that Wagner, who was on duty on June 9, 1994, had "flipped" the three tires up and leaned them against two larger tires, and that appellant had to move the first tire away from the other two and rotate it one hundred eighty degrees before rolling it into his truck. When asked what caused the tire to fall, appellant answered "I don't know." He further stated:
 "I was struck from behind and the next thing I knew the tire that was in my hands, or the tire that I was getting ready to roll in was, I was through it like a doughnut. * * * The back two tires had hit me just below the knees and had taken me to the floor and then the tire that I had come through then come down and settled on top of those two tires. So there was actually three tires was on me."
On cross-examination, appellant testified that he had never seen leaning tires fall before. He stated that he has seniority at Preston to bid on trucking routes, and that he and other truck drivers have always assisted in loading the large tires onto their own trucks. Appellant further testified at trial as to the nature of his injuries, the pain he has suffered as a result of the accident, and his resulting impairment and difficulty performing tasks after returning to work. He stated that he worries about his ability to perform such activities in the future.
Wagner testified at trial that appellant was picking up a less-than-truck load ("LTL") of tires on June 9, 1994. He further testified that General Tire had changed to using more LTL loads, which are transported in smaller trucks, in 1993, as a cost-cutting measure. Wagner stated that the tires which fell on appellant had a rounded tread; however, they were not supposed to fall once they were leaned, and it was standard practice to lean such tires on a stack of larger tires that were in the smokestack position. Wagner stated that he was backing the forklift out of appellant's truck when he looked over his shoulder and saw the tires fall on appellant. Appellant was six to seven feet from the tires when they fell, and the tires were twelve to fifteen feet from appellant's truck. Wagner further stated that General Tire has a "squeeze attachment" for the forklift that is intended to eliminate the need to roll the large tires; however, the attachment was never used because it took too long to install and remove.
Kimberly Thompson testified generally at trial as to appellant's degree of injury and the amount of pain he suffered after the accident. Kimberly further testified that appellant was not able to walk any distance without significant pain, and that she is angry because he will never be "normal."
Dr. Berus, an orthopedic surgeon who repaired appellant's injuries after the accident, testified in a video deposition that appellant suffered from a compound fracture of the left ankle and multiple bone and soft tissue injuries to his right foot and ankle. Dr. Berus stated that appellant had no unusual post-operative complications from the surgery; however, he was likely to have pain, degenerative arthritis, and limited range of motion in both ankles and feet as a result of the accident on June 9, 1994.
Dr. Peoples, an orthopedic surgeon who evaluated appellant's injuries on February 13, 1996, testified in his video deposition that, almost two years after the accident, appellant still had pain and "sense of locking" in his right foot, some numbness in his right leg, ankle and foot, and an "abnormal" gait. Dr. Peoples also stated that appellant's type of injury can cause significant stress on a patient's hips, knees, and lower back. He testified that appellant's injuries and/or deformities are permanent, and his functioning capacity "is not as good as it used to be."
At the close of appellant's evidence, General Tire made an oral motion for a directed verdict. In support thereof, General Tire's attorney argued that General Tire had not breached a duty owed to appellant, and that appellant had put forth no evidence as to the proximate cause of his injuries. The motion to dismiss was overruled, and appellant's counsel withdrew Ryan and Megan Thompson's claims for loss of consortium.
Testimony was then presented on behalf of General Tire by security officer Thomas E. Fiser, General Tire's warehouse shipping manager Frederick Rohrer, and Preston's terminal manager and salesman Ron Phipps.
Fiser testified at trial that he interviewed appellant in the hospital on June 10, 1994, at which time appellant told him "he had been loading the tires for ten years that way and it was just an accident."
Rohrer testified at trial that the truck drivers who haul for General Tires decide the sequence of loading their own trucks, and that it is standard procedure for LTL drivers to help load the tires. He further stated that rolling a large tire is a "two-person operation," with one person at the side of the tire and one in back; however, it is standard practice for one person to roll the tires alone. Rohrer testified that he saw appellant "walking back and forth limping" after the tires fell, and that appellant told Rohrer that "he turned his back on some tires and they fell over." Rohrer further testified that, in his opinion, there was no need to post warning signs in the tire loading area, because the obvious danger of falling tires was well known to everyone who loaded the tires, and no leaned tires had ever fallen over before June 9, 1994.
On cross-examination, Rohrer testified that the tires are leaned to prevent falling, they could fall if not leaned properly, and he does not know of any previous problem appellant may have had with rolling tires. Rohrer further stated that General Tire had no special procedure to ensure that the tires were leaned properly. He stated that General Tire began using more LTL shipments in 1993, as a cost-cutting measure.
Phipps testified at trial on cross-examination that he hired appellant to drive trucks for Preston, and that appellant has seniority, which "allows him to bid on the runs" of his choice. Phipps further testified that customers other than General Tire also ask Preston's drivers to help load trucks.
At the close of all the evidence, the defense rested. Out of the hearing of the jury, General Tire renewed its motion for a directed verdict, which was denied. On November 21, 1996, a general verdict was rendered by the jury in favor of appellant. In interrogatories, the jury found that the total amount of damages to which appellant was entitled was $60,000; however, the jury also found that the amount of negligence attributable to appellant was fifty percent. The general verdict form for Kimberly Thompson's loss of consortium claim was returned to the trial court blank.
On December 2, 1996, appellant filed a motion for a new trial. On December 19, 1996, General Tire filed a motion for judgment notwithstanding the verdict, in which it reasserted that appellant "presented no evidence whatsoever that Dave Wagner had improperly tipped and leaned the tires which subsequently caused injury to plaintiff Terry Thompson." General Tire also asserted in its motion that appellant failed to show at trial that it had "a duty of care to protect or warn plaintiff Terry Thompson of the danger created from the leaned tires." On January 8, 1997, the trial court filed a judgment entry in which it summarily denied both parties' motions. On that same day, the trial court filed a judgment entry journalizing the jury verdict for appellant in the amount of $30,000, "subject, however, to the subrogation rights of involuntary plaintiff Preston Trucking Company."
On January 22, 1997, General Tire filed a "MOTION FOR TAXATION OF COSTS." On January 31, 1997, appellant filed a "MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR TAXATION OFCOSTS/PLAINTIFFS' REQUEST FOR ADDITIONAL NECESSARY LITIGATINGEXPENSES TAXED AS COSTS." On February 4, 1997, the trial court denied General Tire's motion. On February 6, 1997, appellant filed a notice of appeal from the trial court's January 8, 1997 judgment entry, case number 97-WM-003.
On April 11, 1997, a hearing was held on appellant's motion for costs and on April 15, 1997, the trial court filed a judgment entry in which it granted appellant's motion and ordered General Tire to pay an additional $1,327.60 in litigation costs. The trial court also found that appellant's counsel was entitled to a fee of $10,000, or one third of appellant's "actual net recovery" of $30,000, and ordered that "the surviving subrogation claim of Preston of $36,795.000 shall be reduced by that amount to $26,795.00." On May 1, 1997, appellants filed a notice of appeal from the trial court's April 25, 1997 judgment entry, case number 97-WM-010, and a motion to consolidate case number 97-WM-003 with 97-WM-010. On May 12, 1997, General Tire filed a notice of cross-appeal. The two cases were subsequently consolidated for purposes of this appeal under case number 97-WM-010.
This court will first address General Tire's first cross-assignment of error. General Tire asserts therein that the trial court erred by denying its motions for directed verdict and for judgment notwithstanding the verdict because appellants presented no evidence that General Tire's alleged negligence was the proximate cause of Terry Thompson's injuries. In addition, General Tire asserts that it did not breach a duty to warn Thompson, a business invitee, that the leaned tires were dangerous because such danger was open and obvious.
Motions for directed verdict are governed by Civ.R. 50(A) which states, in pertinent part:
 "(4) When Granted on the Evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
A motion for directed verdict presents a question of law; however, "in deciding such a motion, it is necessary for a court to review and consider the evidence." O'Day v. Webb (1972), 29 Ohio St.2d 215, at paragraph three of the syllabus. See also,Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66.
It is well-established that "[t]he `reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim." Ruta v. Breckenridge-Remy,supra, at 69. Therefore, if the evidence relating to the essential issues or elements of the plaintiff's claim are not sufficient so as to permit reasonable minds to reach different conclusions, it is the responsibility of the trial court to withhold that issue from the jury. O'Day, supra, at 220.
Motions for judgment notwithstanding the verdict are governed by Civ.R. 50(B) which states, in pertinent part:
 "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion * * *."
The standard to be applied by the trial court when ruling on a motion for judgment notwithstanding the verdict is the same as that to be applied on a motion for a directed verdict. Osler v.Lorain (1986), 28 Ohio St.3d 345, 347.
It is well-settled that in order to establish actionable negligence, "one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. * * *"Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, citing Menifeev. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77.
The duty of care owed to an invitee includes "having the premises in a reasonably safe condition and warning him of latent or concealed defects or perils of which the possessor has or should have knowledge." Patete v. Benko (1986), 29 Ohio App.3d 325,328. A landowner is, however, "under no duty to protect a business invitee against dangers which are known to such invitee or are so open and obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." Sidle v. Humphrey (1968), 13 Ohio St.2d 45, at paragraph one of the syllabus.
In this case, it is undisputed that appellant was an invitee of General Tire.[3] Therefore, in addition to showing that General Tire breached a duty of care to appellant, appellant must also demonstrate that the alleged breach proximately caused his injuries. Jeffers v. Olexo, supra, at 143.
The testimony presented at trial in this case demonstrates only that on June 9, 1994, appellant was permanently injured when a stack of three large tires weighing over one thousand pounds each, which were placed on tread and leaned against a smokestack of larger tires by General Tire employee David Wagner, fell on appellant in General Tire's warehouse. Appellant presented no evidence at trial that Wagner had improperly stacked the large tires which fell on him, or that General Tire's custom of stacking tires before rolling them onto trucks for shipment created an unreasonably unsafe condition which was not open and obvious to appellant on June 9, 1994.
This court has reviewed the entire record of proceedings which was before trial court and, upon consideration thereof and the law, finds that, even assuming the truth of the evidence presented by appellants at trial, and giving appellants the benefit of all reasonable inferences therefrom, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is that appellants presented no evidence that General Tire breached a duty of care owed to appellant which proximately caused his injuries. Accordingly, the trial court erred by denying General Tire's motions for directed verdict and judgment notwithstanding the verdict, and General Tire's first cross-assignment of error is well-taken.
General Tire asserts in its fifth cross-assignment of error that the trial court erred by denying its motion for taxation of costs and granting appellants' motion for costs. In support thereof, General Tire argues that it was actually the "prevailing party" in the trial court "for purposes of assessing costs under Civil Rule 54(D)."
Civ.R. 54(D) states:
 "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."
[Emphasis added.]
Generally, the trial court's power to allocate costs pursuant to Civ.R. 54(D) is discretionary and will not be reversed on appeal absent an abuse of discretion. Hagemeyer v. Sadowski
(1993), 86 Ohio App.3d 563, 567. The Supreme Court of Ohio has interpreted Civ.R. 54(D) to mean that the trial court is not empowered "to award costs to a non-prevailing party." Vance v.Roedersheimer (1992), 64 Ohio St.3d 552, 555. Ohio courts have stated that the "prevailing party" is the "one in whose favor the decision or verdict is rendered and judgment entered." Hagemeyer,supra, at 566, quoting Yetzer v. Henderson (June 4, 1981), Richland App. No. CA-1967, unreported.
Upon consideration of the foregoing, and our disposition as to General Tire's first cross-assignment of error, we find that the trial court erred by denying General Tire's motion to allocate costs and granting appellants' motion for same. Accordingly, General Tire's fifth cross-assignment of error is well-taken.
Pursuant to our disposition as to General Tire's first cross-assignment of error, we find that appellants' first, second, third and fourth assignments of error and General Tire's second, third and fourth cross-assignments of error are moot and therefore not well-taken.
On consideration whereof, this court finds further that substantial justice has not been done cross-appellant General Tire, and the judgment of the Williams County Court of Common Pleas is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion. Court costs of these proceedings are hereby assessed to appellants.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] Tires stacked in "smokestack" style are lying flat on their sidewalls, one on top of the other.
[2] Originally, General Tire Sales, Inc., and General Tire International were also listed as defendants in this action. However, they were dismissed on June 20, 1995, and August 24, 1994, respectively.
[3] Generally, an invitee is defined as a "business visitor" who is "`on the premises of another for purposes in which the possessor of the premises has a beneficial interest.'" Patete v.Benko (1986), 29 Ohio App.3d 325, 328, quoting Scheibel v. Lipton
(1951), 156 Ohio St. 308, at paragraph one of the syllabus.