OPINION
{¶ 1} Plaintiff-appellant Samuel Reichman appeals from the June 7, 2002, Judgment Entry of the Licking County Court of Common Pleas granting summary judgment to defendant-appellee Campus View Village.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee Campus View Village is an apartment complex which owns and operates housing for, among others, Ohio State University-Newark and COTC (Central Ohio Technical College) students. Appellant Samuel Reichman, a student at both, was a Resident Advisor at Campus View Village.
 {¶ 3} At approximately 10:30 p.m. on April 17, 1999, appellant, who was off duty from his position as a Resident Advisor, went to a "real big party" taking place in Hallway 2 of the apartment complex with his friends. Reichman Deposition at 31. The party, which was attended by "at least a hundred people", spilled out of the room, into the hallway and onto the sidewalk. Reichman Deposition at 36-37. According to appellant, there were two "Big Daddy kegs" of beer being served at the party. Reichman Deposition at 37. When asked what the general mood of the party was when he first arrived at the same, appellant responded as follows: "When I first arrived it was a good time, . . . it was just a party . . . It was just a normal party. That's why we stayed." Reichman Deposition at 36.
 {¶ 4} After he had been at the party for approximately 10 to 15 minutes, appellant observed an argument break out between a big group of high school kids and Justin Zachariah. According to appellant, after Zachariah told the kids to "screw off" and left the room, the group of kids followed Zachariah out the door. Appellant, upon exiting the room, saw that the group had Zachariah "pressed back up against the glass door and they were up in his face." Reichman Deposition at 31. Since he was concerned that someone was going to get hurt, appellant announced himself as a Resident Advisor and "stepped in between them with my arms out like this . . ., and said `We can't do this,' and they just blasted me." Reichman Deposition at 32. Shortly thereafter, appellant was struck across the face and on top of his head by beer bottles. Appellant estimated that probably over 50 people were involved in the attack.
 {¶ 5} On the date in question, appellee Campus View Village employed Steven Simross as an on site security guard. While Simross, who had no specialized security training, was not paid by appellee, he was given free rent in exchange for his services. Simross was not furnished with any equipment, such as radios, mace or handcuffs, or with a uniform.
 {¶ 6} Between September of 1998, when he became the security guard, and April 17, 1999, the date of the incident in question, Simross had to call the police approximately five times for assistance in dispersing parties. When questioned about the nature of such calls, Simross responded as follows:
 {¶ 7} "Well, if I recall correctly, we had a — not necessarily a curfew time on the weekends but what we call quiet time where, you know, the noise needs to stop so those that, you know, prefer to sleep can go and do so. During the weeknights, it was like 10 p.m., Sunday through Thursday. On the weekends, Friday, Saturday, I believe it was 1 o'clock.
 {¶ 8} "So, basically, if it looked like, you know, things were still going strong at about 12:30 or so, 1 o'clock — you know, the students were familiar, you know, with — with the rules in terms of the time frame and that was basically my criteria for calling assistance in." Simross Deposition at 17. According to Simross, none of the five prior incidents involved fights. On April 17, 1999, Simross was aware that a party was going to be held since the host, who Simross claimed was "fairly responsible as far as . . . patrolling his own parties and shutting them off" told him in advance of the party. Simross Deposition at 32. At approximately 11:00 p.m., a student came to Simross and told him that the party was getting larger than it should be. According to Simross, at such time, a number of people were in the parking lot drinking beer, including juveniles. Under appellee Campus View Village rules, drinking in the parking lot and underage consumption of alcohol are forbidden. When Simross went over to the apartment to speak with the host, he observed a lot of people who he believed were not residents of Campus View Village. After he observed a beer bottle flying over his head while he was in the parking lot, Simross called the police on his cell phone. According to Simross, appellant was hit by a beer bottle shortly thereafter.
 {¶ 9} On April 3, 2001, appellant filed a complaint against appellee in the Licking County Court of Common Pleas. Appellant, in his complaint, alleged that appellee was negligent in providing security to appellant and to the residents of Campus View Village and that appellee was negligent in failing to provide adequate training, protection and security to "the advisors, employees and agents including the resident advisors of Campus View Village." Both parties filed Motions for Summary Judgment. As memorialized in a Judgment Entry filed on June 7, 2002, the trial court granted appellee's motion while denying that filed by appellant. The trial court, in its Judgment Entry, stated, in part, as follows:
 {¶ 10} "In sum, Defendant Campus View met its duty to provide reasonable security to its tenants, including Plaintiff. Defendant Campus View did not owe a duty to protect Plaintiff from the unforeseeable criminal assault, and Plaintiff's resulting injury, which occurred on April 17, 1999. In addition, the Court does not find based upon the totality of the circumstances, that Defendant Campus View acted to provide security in a negligent manner which damaged Plaintiff due to his reliance on such security. Finally, Defendant Campus View did not breach an agreement to provide specific security measures and, even if it was determined Defendant Campus View breached its duty to provide reasonable security, Plaintiff has failed to demonstrate such a breach was the proximate cause of the injury sustained by Plaintiff. For all these reasons, Defendant Campus View is entitled to summary judgment as a matter of law."
 {¶ 11} It is from the trial court's June 7, 2002, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 12} "I. The record does not support the judge's finding that the incident of April 17, 1999 was not foreseeable to the defendant/appellee as there were previous incidents of violent conduct on the defendant/appellee's premises.
 {¶ 13} "II. The record does not support the judge's finding that the defendant/appellee conformed to a standard of ordinary care where the security guard in place testified that the lack of training and equipment contributed to the attack.
 {¶ 14} "III. The record does not support the judge's finding that the defendant/appellee met its duty to take reasonable precautions in providing security.
 {¶ 15} "IV. The record does not support the judge's finding that the defendant/appellee was not negligent in providing security after it had undertaken the duty to do so."
 {¶ 16} I, II, III, IV {¶ 17} Appellant, in his four assignments of error, argues that the trial court erred in granting appellee's Motion for Summary Judgment. Appellant specifically contends that the record does not support the trial court's findings that: (1) the incident of April 17, 1999, was not foreseeable, (2) appellee conformed to a standard of ordinary care, (3) appellee met its burden to take reasonable precautions in providing security, and (4) appellee was not negligent in providing security after it had undertaken the duty to do so.
 {¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed.
 {¶ 19} The crucial issues for determination are whether appellee owed a duty to protect appellant from the assault that occurred on April 17, 1999, and whether appellee was negligent in performing such duty. In order to establish a claim for negligence, a plaintiff must establish a duty owed by the defendant/defendants and that a breach of the duty proximately caused injury to the plaintiff. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142, 539 N.E.2d 614. As a general rule, landlords, such as appellee, have no duty to protect their tenants from the criminal acts of third persons. Doe v. Beach House Dev. Co. (2000),136 Ohio App.3d 573, 737 N.E.2d 141. However, a landlord does have a duty to take reasonable measures to provide reasonable security in common areas. Id. Liability for a breach of that duty attaches only if the tenant can show that: (1) the landlord could have reasonably foreseen criminal activity and did not take reasonable measures to provide reasonable security; and (2) the negligence of the landlord existed at the time the criminal activity took place and proximately caused the tenant's injury. Id. Foreseeability is based upon "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act." Menifee v. OhioWelding Products, Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707.
 {¶ 20} Upon our review of the record, we concur with the trial court that appellee, as the landlord, could not have reasonably foreseen the assault on appellant and that, therefore, appellee did not owe a duty to appellant to protect appellant from the same. As is noted by appellant in his brief, Steven Simross, in his deposition, testified that he had called the police five times during his tenure as security guard for assistance in dispersing parties. However, there is no evidence that violence was involved during any of the times. The following is an excerpt from Simross' deposition testimony:
 {¶ 21} "Q. In any of those five incidences where you needed to call assistance, were they what you termed an emergency, similar to what occurred on April 17th?
 {¶ 22} "A. No. I tried to — you know, I tried to just look ahead and make sure that it didn't develop into a problem. For the most part, it was just a — just a clearing maneuver to try to get everybody quieted down and turn it off.
 {¶ 23} "Q. Would it be a fair statement, Steve, to call the incident on April 17th, 1999 the most serious that you had here?
 {¶ 24} "A. Yes." Simross Deposition at 18-19.
 {¶ 25} Appellant, when asked whether, prior to April 17, 1999, there was any occasion he was aware of where a resident of Campus View Village was injured as a result of a fight responded in the negative. Reichman Deposition at 29. As is set forth above in the statement of facts, appellant further testified that when he first arrived at the party, it was just a "normal" party. Reichman Deposition at 36. While Sharon Cooper, the manager of Campus View Village at the time of the incident, testified that "once in a while a fight would break out now and then between a couple guys. Usually drinking was involved in that, but usually over a girl", Cooper further testified that "we did not have party size, you know — there was no limit size on a party size, that was never an issue. We never had a problem until that incident." Cooper Deposition at 19-20. Furthermore, James Russell, the property manager for Campus View Village Apartments, indicated in an affidavit attached to appellee's Motion for Summary Judgment that, to his knowledge, the incident of April 17, 1999, "was the first time any individual has been assaulted at Campus View Village Apartments."
 {¶ 26} In short, we find that, under the totality of the circumstances, the criminal acts of the third party or parties in assaulting appellant were not foreseeable and that, therefore, appellee was under no duty to protect appellant from the same. Appellee, therefore, cannot be found liable under a negligence theory. We further concur with the trial court that, by employing Simross as a security guard, appellee took reasonable security precautions. As noted by the trial court in its opinion, "[i]n the absence of any similar prior act or circumstance, . . . Defendant Campus View [was] not required to take additional precautions to insure the safety of Plaintiff from a criminal assault."
 {¶ 27} As is stated above, appellant further challenges the trial court's finding that appellee was not negligent in providing security "after it had undertaken the duty to do so." Appellant specifically contends that appellee is liable to appellant since appellant detrimentally relied on appellee to provide security.
 {¶ 28} However, the written lease agreement between appellee and appellant in this matter specifically provides, in pertinent part, as follows:
 {¶ 29} "12. NON-LIABILITY OF THE LESSOR. Lessee acknowledges that any security measures provided by the Lessor shall not be treated by the Lessee as a guarantee against crime or reduction in the risk of crime. The Lessor shall not be liable to Lessee, the Lessee's guests, or other occupants for injury, damage or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes."
 {¶ 30} A landlord may contractually create a duty to provide security to his tenants. See Blair v. Property Management Consultants
(1987), 40 Ohio App.3d 103, 531 N.E.2d 752. However, the lease in this matter creates no such duty. The express language in the subject lease clearly and unambiguously states that any security measures implemented by appellee are not to serve as a guarantee against crime or reduction in the risk of crime and that appellee shall not be liable for the criminal conduct of others. We find, therefore, that there was no provision in the lease requiring appellee to take stricter security measures.
 {¶ 31} Based on the foregoing, we find that the trial court did not err in granting appellee's Motion for Summary Judgment. Appellant's four assignments of error are, therefore, overruled.
 {¶ 32} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.
By Edwards, J., Gwin, P.J. and Boggins, J. concur.
Topic: Landlord Liability for assault.