JOURNAL ENTRY and OPINION
{¶ 1} In this negligence action to recover for an injury that resulted from a slip and fall on a business premises, plaintiff-appellant Joseph Mesko appeals from the jury verdict in favor of defendants-appellees George Elias and Pierre Boutros.
 {¶ 2} Appellant argues that since the evidence unequivocally showed his fall occurred on appellees' premises, appellees' negligent maintenance must have caused the incident; therefore, the jury verdict is against the manifest weight of the evidence.
 {¶ 3} Following a review of the record, however, this court cannot agree. Consequently, the jury's verdict is affirmed.
 {¶ 4} Appellant sustained his injury on Saturday, December 8, 2001. He and a friend, Hope Blair, went to the West Side Market just prior to closing time to purchase vegetables. The market is a facility which is owned and operated by the City of Cleveland. Many other people had the same idea that cold and dry wintery day; the market was "wall to wall people,"[1] i.e., very crowded.
 {¶ 5} From the "back parking lot," appellant and Blair walked under the canopy where the vegetable stands lined the center aisle, proceeding "down one side * * *, and then coming back up the other * * *." Appellant followed Blair. Appellant's ease of locomotion was hindered due to a childhood injury which rendered his left leg shorter than his right; as a consequence, he wore a special shoe on his left foot and also required a cane to aid his balance.
 {¶ 6} By the time the two reached the pair of adjacent stands situated near West 25th Street, appellant was carrying plastic shopping bags of produce along with his cane. Although the crowd and the bags obscured his view of the floor, his eyes were drawn to the display of lettuce there. The display had been arranged by appellee Boutros, the manager of these stands, which were leased by appellee Elias from the City of Cleveland.
 {¶ 7} The testimony adduced at trial indicated the stands in that area were constructed on top of "plastic waterproof" tables which were provided to tenants-vendors by the city.[2] Each table had "holes on the edges" for drainage. The tables were, however, "too low" for display purposes. Thus, on top of them, the vendors constructed stands which were quite tall, and tilted slightly downward toward the front and the center aisle, where the customer stood.
 {¶ 8} According to Boutros, leaf lettuce looked more appetizing after it was washed. Thus, after opening a case of lettuce behind the stand, he took each bunch, dipped it into a bucket of water, shook off the excess moisture, and placed it at the top of the stand. When a customer made a purchase, Boutros took a bunch from the top, since he could not reach the ones at the front of the display.
 {¶ 9} When appellant concluded his purchase from Boutros, he "turned halfway around," picked up his right foot to take the step, and "just like that, [his] right foot went right straight out, and [he] went [down] so hard and so quick * * *" that, although he attempted to grab hold of something to stop his fall, the area was too crowded, so the next thing he realized was that he was flat on the floor of the market. Appellant testified that as he fell, he "heard a crack." Subsequent medical treatment revealed he sustained a fracture of his left femur.
 {¶ 10} Appellant subsequently filed the instant action against appellees, claiming their negligent maintenance of the floor in front of their stands caused his injury.
 {¶ 11} Appellant's case eventually proceeded to trial before a jury. After hearing the testimony and considering the physical evidence submitted by the parties, the jury received instructions; the record reflects the court gave instructions prepared by appellant. The record further reflects neither party sought to submit interrogatories to the jury. Thus, at the conclusion of trial, the jury rendered a general verdict in favor of appellees on appellant's claim.
 {¶ 12} Appellant presently challenges the jury's verdict with the following assignment of error:
 {¶ 13} "I. The Jury Verdict is against the Manifest Weight of the Evidence."
 {¶ 14} Appellant argues the record reflects he proved by a preponderance of evidence each element of his cause of action in negligence; therefore, the jury's verdict is unsupported and must be reversed. This court cannot agree.
 {¶ 15} In matters of a review of the weight of the evidence, an appellate court must not substitute a different judgment for that of the jury where there exists some competent and credible evidence supporting the jury's decision. Myers v. Garson,66 Ohio St.3d 610, 1993-Ohio-9. This court remains mindful, too, that the jury's assessment of the credibility of the evidence is given deference. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Thus, it is axiomatic that when the appellate court is not provided with all of the evidence upon which the jury based its decision, an argument that the verdict is unsupported in the evidence cannot succeed. See, e.g., Columbus v. Hodge
(1987), 37 Ohio App.3d 68; Tyrell v. Investment Assoc., Inc.
(1984), 16 Ohio App.3d 47.
 {¶ 16} In order to establish negligence, appellant was required to provide evidence which demonstrated appellees, by their action or omission, breached a duty they owed to appellant, and such action or omission was the proximate cause of his injury. Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. No interrogatories were submitted to the jury in this case; therefore, the record must be examined to determine whether appellant established each element of his cause of action.
 {¶ 17} The record reflects appellant established the first element of his claim of negligence, i.e., that as a business invitee, appellees owed him a duty of care. Nevertheless, from the record of the evidence adduced at trial, the jury was justified in concluding appellant failed to establish the other two necessary elements. Appellant proved neither that appellees breached a duty they owed him, nor that their actions or omissions proximately caused his injury.
 {¶ 18} Appellees each testified that the city was responsible for maintenance of the area in front of the stands. Boutros testified that the construction of the tables made any excess water coming from displays drain toward the center aisle. Furthermore, Boutros stated that at a busy time like a Saturday afternoon, it was "impossible" for a vendor to patrol the aisle.
 {¶ 19} His testimony was corroborated by that of Bradec, the market's manager. Bradec stated that certain city employees policed the aisle, and that he had never received complaints about any water problems in front of appellees' stands. According to Bradec, he arrived to see appellant lying in a wet spot in thecenter aisle. Although appellees' stand "had four piles of wet greens hanging over above" the floor in front, and the floor "was wet," he did not see the greens "dripping" water.
 {¶ 20} The jury could conclude from this evidence that if appellant's fall resulted from any breach of a duty, the duty was owed by the city rather than appellees. That conclusion would have been buttressed during closing argument.
 {¶ 21} Appellees' trial counsel drew the jury's attention to appellant's Exhibit 1-C, advising them to "look at [that] picture. * * * [T]here's smashed fruit, there's smashed leaves, you can tell where they've been stepped on. There's no water in this picture, and this picture was taken by the police immediately after [the incident.]" Indeed, during his own closing address, appellant's counsel impliedly conceded that on this particular element of his client's cause of action, the evidence was lacking. Appellant's counsel urged the jury to look at one photograph in which it could "probably actually see that's probably water there, * * * the lettuce is out over the edge and that's what caused the water * * *."
 {¶ 22} At any event, even if appellant established appellees' breached a duty they owed him, the record reflects he did not establish any action or omission on their part proximately caused his fall. Appellant clearly did not know what caused his fall.
 {¶ 23} Appellant testified that at the time of the incident, he was sixty-one years old, that he had undergone a complete left knee replacement in 1994, that because his left leg was approximately an inch-and-a-half shorter than his right, he wore a special shoe on his left foot with an augmented sole, that he had arthritis and a limping gait, that he used a cane to aid him in his locomotion, that he was carrying bags that obstructed his view of the ground, and that the market was extremely crowded that day. He admitted he often was "jostled" as he shopped.
 {¶ 24} In describing his fall, he stated that he was making an "180" degree turn, picked up his right foot, and that foot "went right straight out," so that he was unable to "grab something" to stop himself from falling hard. He stated on direct examination that he "didn't know what [he] hit" that resulted in him laying on his back on the aisle floor; he could only speculate that his fall was caused by water, since he was "lay[ing] in water" after he fell. Speculation, however, does not establish a claim of negligence. Allen v. C.G.S. Investments,Inc. (June 11, 1992), Cuyahoga App. No. 62947.
 {¶ 25} The jury was instructed that the "mere fact that plaintiff sustained an injury does not demonstrate that defendants breached any duty of * * * care." Rather, appellant was required to "prove by a preponderance of the evidence that his injuries were proximately caused by a negligent act or failure to act of defendants."
 {¶ 26} Clearly, the jury was provided with evidence in the form of both testimony and photographs which demonstrated appellant had not established his claim against appellees. Under these circumstances, this court cannot determine the jury's verdict was against the weight of the evidence.
 {¶ 27} Appellant's assignment of error, accordingly, is overruled.
 {¶ 28} The verdict is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., P.J. and Corrigan, J. concur.
[1] Quotes are taken from trial testimony.
[2] Photographs of the area where appellant's fall occurred were introduced into evidence at trial, however, appellant did not include them in the record on appeal. Consequently, the physical characteristics of the premises are gleaned from witness' descriptions of the photographs' contents.